**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jack Palmer VANEATON,
Defendant–Appellant.**

No. 93–30387.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 15, 1994.

Decided March 13, 1995.

**1424**

concedes that the police who arrested him for receiving stolen property had probable cause to do so, but he contends that the warrantless arrest violated the rule of *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), a rule ordinarily requiring police to obtain a warrant before arresting a suspect inside his home, or in this case, inside his motel room.

We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291 and Fed. R.Crim.P. 11(e)(2). We affirm the district court's denial of Vaneaton's motion to suppress a revolver found in his motel room in connection with his arrest. This revolver was used to secure his conditional plea of guilty to a charge of felon in possession of a firearm.

## I

On August 25, 1992, officers of the Portland Police Bureau arrested Vaneaton in Portland, Oregon on outstanding no-bail warrants charging him with a parole violation and contempt of court. He had failed to report as required to his parole officer. Vaneaton, a notorious, thrice-convicted burglar known by the police to operate primarily in the Willamette Valley and along the coast of Oregon, lived in Independence, Oregon, some 60 miles from Portland. He was known to have committed crimes in at least four counties: Polk, Lincoln, Jackson, and Multnomah.

Around the time Vaneaton was arrested, he had been repeatedly selling goods to various pawn shops in the Portland area, an activity that attracted the attention of the police. Among the items he sold were pieces of jewelry that turned out to have been stolen during recent unsolved residential burglaries in the Bend, Oregon area. Bend is located in the middle of the state, approximately 150 miles from Portland, and 100 miles from Independence. When arrested, he had documents on his person indicating he had previously been in Bend. Vaneaton was

Bryan Lessley, Asst. Federal Public Defender, Eugene, OR, for defendant-appellant.

Jeffrey Kent, Asst. U.S. Atty., Eugene, OR, for plaintiff-appellee.

Before: THOMPSON and TROTT, Circuit Judges, and TASHIMA,* District Judge.

Opinion by Judge TROTT. Dissent by Judge TASHIMA.

TROTT, Circuit Judge:

John Vaneaton[1] was arrested on September 9, 1992, while standing just inside the open door of his motel room in Bend, Oregon. He was arrested without a warrant by officers of the Bend Police Department. He

* The Honorable A. Wallace Tashima, United States district Judge, Central District of California, sitting by designation.

1. The defendant-appellant's name is spelled many different ways in the record. We hope our choice is correct.

released shortly after his arrest. The police were unaware of his release.

As part of an investigation instigated as a result of Vaneaton's possession of stolen property, and in order to determine if proof could be developed that Vaneaton had been in Bend precisely at the time of the crimes during which the jewelry was stolen, uniformed officers of the Bend Police Department were detailed on September 9, 1992, to tour motels in that area to look for such evidence. They found it at their first stop, the Rainbow Motel. Not only did they discover that Vaneaton had been in Bend at the time of the burglaries, but they also discovered to their surprise that he was back, and staying again in the Rainbow Motel for at least another night. This discovery was unexpected for two reasons. First, the Bend police believed he was still in custody for a parole violation. Second, it was counter intuitive to find him back at the scene of the crime.

Armed with this unexpected information, and now with ample probable cause to arrest him for receiving stolen property with respect to the recovered loot he possessed in Portland, the officers called for backup. When it arrived, they went directly to his motel room to see if he was there and to arrest him if he was.

Wearing their uniforms and with their guns in their holsters, the officers knocked on the door to Vaneaton's room. They made no demands; in fact, they said nothing. According to the stipulated facts, Vaneaton opened the curtains of a window, saw the officers, and opened the door. Detective Carpenter asked him if he was Jack Vaneaton, and when he said he was, he was arrested. At the moment of his arrest, Vaneaton was standing at the doorway but just inside the threshold. The arresting officer was immediately outside the threshold of the room and did not enter before advising Vaneaton he was under arrest. Vaneaton was then handcuffed, advised of his *Miranda* rights, and asked for permission to search the room. He gave verbal permission for such a search and signed a written consent form. Officer Reeves also asked him if he had a gun. Vaneaton said he did and directed them to a

closet. The police then found a revolver where Vaneaton had told them it was located.

## II

The issue Vaneaton raises is whether the police, acting with probable cause but without a warrant and while standing outside his motel room, could lawfully arrest him while he was standing immediately inside the open doorway. Relying on *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), and denying the existence of exigent circumstances, Vaneaton claims the answer is clear: The arresting officers were required to have had a warrant.

In *Payton,* the Court drew a bright line at the identifiable threshold of a protected dwelling and said such a line cannot be crossed to arrest a suspect inside, absent consent or exigent circumstances:

> The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy *more clearly defined* than when bounded by the *unambiguous physical dimensions* of an individual's home—a zone that finds its roots in clear and specific constitutional terms: "The right of the people to be secure in their ... houses ... shall not be violated." ... In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has *drawn a firm line* at the entrance to the house. Absent exigent circumstances, that *threshold* may not reasonably be crossed without a warrant.

445 U.S. at 589–90, 100 S.Ct. at 1381–82 (citations omitted) (emphasis added). The purpose of this rule is manifest from the rule itself: to protect an individual's "zone of privacy." Thus, the result of *Payton* is that "seizures inside a home without a warrant are presumptively unreasonable." *Id.* at 586, 100 S.Ct. at 1380.

The government's response to Vaneaton's claim is that a warrantless arrest at the doorway of a suspect's dwelling is constitutionally proper, provided that law enforcement has not misidentified itself, has not used coercion, and the suspect acquiesces to the encounter. In support of this argument, the government invokes this Court's discus-

sion in *United States v. Whitten,* 706 F.2d 1000, 1015–17 (9th Cir.1983), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984), of the arrest of Whitten's codefendant, John Gaiefsky, and *United States v. Johnson,* 626 F.2d 753 (9th Cir.1980), *aff'd,* 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982). In *Whitten,* we held that Gaiefsky's arrest while standing in the doorway of his hotel room did not violate *Payton* because "[a] doorway ..., unlike the interior of a hotel room, is a public place." 706 F.2d at 1015. As authority for this proposition, we relied on *United States v. Santana,* 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976).

■ As we read the controlling authority, the question presented in this case is not decided only on the basis of whether Vaneaton was standing inside or outside the threshold of his room, but whether he "voluntarily exposed himself to warrantless arrest" by freely opening the door of his motel room to the police. *Johnson,* 626 F.2d at 757. If he so exposed himself, the presumption created by *Payton* is overcome. *See id.*[2]

### A

In resolving whether Vaneaton voluntarily exposed himself to warrantless arrest, we find considerable guidance in *United States v. Johnson,* 626 F.2d 753 (9th Cir.1980). In *Johnson,* the question before us was whether Johnson's warrantless arrest as he stood at an open doorway within his home satisfied *Payton.* We held that it did not because of the deceitful manner in which the door was caused by the arresting officers to be opened. The agents had used a subterfuge to get Johnson to open the door, and because of their use of that subterfuge—they misrepresented their identities—we held that "Johnson's initial exposure to the view and the physical control of the agents was not consensual on his part." *Id.* at 757.

On the basis of factual differences, *Johnson* explicitly distinguished *Santana,* and a pre-*Payton* case from our circuit, *United States v. Botero,* 589 F.2d 430 (9th Cir.1978),

*cert. denied,* 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1045 (1979). *Johnson,* 626 F.2d at 757. In *Santana,* the United States Supreme Court

> upheld the warrantless arrest of a defendant who was standing within the frame of her doorway as the officers approached and who then retreated into the vestibule of her home where the officers followed and effected the arrest. The Court held that once the defendant was exposed to public view in her doorway, her act of retreating into her house could not thwart an otherwise proper arrest by officers who pursued her inside.

*Johnson,* 626 F.2d at 756.

In *Botero,* officers without a warrant knocked on Botero's door, and when he opened it, he was placed under arrest. We held in *Botero,* citing *Santana,* that under the circumstances the doorway in which he was standing was a public place. *Botero,* 589 F.2d at 432. Thus, implicit in *Johnson* is approval of the warrantless arrest of a suspect who voluntarily opens the door of his dwelling in response to a noncoercive knock by the police. This holding is consistent with our holding in *Whitten.*

As in *Johnson* and *Whitten,* the arrest in the instant case involves factors that distinguish it from the arrests made in *Payton* and its consolidated companion case, *Riddick v. New York.* In *Payton,* the police who entered Payton's apartment broke through a closed door with crowbars. No one was home, but incriminating evidence seen in plain view was seized and used to convict him. 445 U.S. at 576–77, 100 S.Ct. at 1374–75. In *Riddick,* the closed door of Riddick's house on which the police knocked was opened by Riddick's young son. Riddick could be seen sitting inside the apartment on a bed. He was covered by a sheet. Without any behavior on Riddick's part that could be construed as consent, the police entered and arrested him on the spot. 445 U.S. at 578, 100 S.Ct. at 1376. In both cases, the entries preceded the arrests.

---

**2.** Because we conclude that Vaneaton's exposure to the police was voluntary, we need not discuss

exigent circumstances.

By contrast, in Vaneaton's case the uniformed police used no force or threats, and unlike *Johnson,* they did not resort to a subterfuge or a ruse, or draw weapons. When Vaneaton saw them through the window, he voluntarily opened the door and exposed both himself and the immediate area to them. No threats or force were used by the police to get him to open the door, and his actions were not taken in response to a claim of lawful authority. The police did not enter the house until they formally placed Vaneaton under arrest. The magistrate's findings of fact that (1) Vaneaton opened the door voluntarily, and (2) no coercion was used by the police, are fully supported by the record. "A trial court's finding on voluntariness should not be overturned unless it is clearly erroneous." *United States v. Al-Azzawy,* 784 F.2d 890, 895 (9th Cir.1985) (citation omitted), *cert. denied,* 476 U.S. 1144, 106 S.Ct. 2255, 90 L.Ed.2d 700 (1986). Accordingly, by opening the door as he did, Vaneaton exposed himself in a public place. His warrantless arrest, therefore, does not offend the Fourth Amendment. *United States v. Watson,* 423 U.S. 411, 421–24, 96 S.Ct. 820, 826–28, 46 L.Ed.2d 598 (1976) (The Fourth Amendment is not violated by a warrantless felony arrest in a public place).[3]

In summary, this episode does not materially resemble the kinds of "invasions" or "intrusions" against which *Payton* seeks to guard. Knocking on a door to attempt to contact a person inside is a common event and hardly a hallmark of a police state, and indeed, *under these facts* the zone of privacy sought by *Payton* to be protected is not implicated. Accordingly, we hold that *Payton* was not violated, and that Vaneaton's arrest was proper.[4]

## CONCLUSION

We conclude that the seizure in this case did not offend the Fourth Amendment. Thus we affirm the district court's denial of Vaneaton's motion to suppress.

AFFIRMED.

TASHIMA, District Judge, dissenting:

I respectfully dissent.

The majority holds that police officers, acting with probable cause, but without a warrant, may arrest a citizen inside his or her home, merely because that citizen opens the door in response to their knock. This result is flatly contrary to *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), in which the Supreme Court held that the Fourth Amendment "prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." *Id.* at 576, 100 S.Ct. at 1375.

In *Payton,* the Court drew a bright line at the physical entrance to the home, stating:

> The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home—a zone that finds its roots in clear and specific constitutional terms: "The right of the people to be secure in

---

3. Our analysis is consistent with our holding in *United States v. Winsor,* 846 F.2d 1569 (9th Cir. 1988) (en banc), which dealt with the validity of a search rather than a seizure. To quote the en banc panel,

> In *United States v. Hersh,* 464 F.2d 228, 229–30 (9th Cir.), *cert. denied,* 409 U.S. 1008, [93 S.Ct. 442, 34 L.Ed.2d 301] ... (1972), the police, while standing on the front porch, looked through a window and saw incriminating evidence inside the residence. We held no search was effected because police merely did what any member of the public was free to do—walk onto the front porch and observe whatever was in plain view through an unobstructed window. Similarly, in *Davis v. United States,* 327 F.2d 301, 303 (9th Cir.1964), the police did what any person could do—they knocked on the front door of a residence, but did not use their authority as police officers to command the occupants to open the door. When the occupant opened the door, he did so voluntarily, not, as Dennis Winsor did, in response to a claim of lawful authority.

*Winsor,* 846 F.2d at 1573.

4. *Accord United States v. Carrion,* 809 F.2d 1120, 1128 (5th Cir.1987) (a suspect standing in an open doorway stands in a public place). *But cf. United States v. Morgan,* 743 F.2d 1158, 1166 n. 2 (6th Cir.1984) (*Payton* requires exigent circumstances before a warrantless arrest can be made of an individual standing in the doorway of a private residence.), *cert. denied,* 471 U.S. 1061, 105 S.Ct. 2126, 85 L.Ed.2d 490 (1985).

**1428**

their ... houses ... shall not be violated." That language unequivocally establishes the proposition that "[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.

*Id.* at 589–90, 100 S.Ct. at 1381–82 (citation omitted). In concluding that "seizures inside a home without a warrant are presumptively unreasonable," *id.* at 586, 100 S.Ct. at 1380, the Court left open only two ways for the government to overcome that presumption: a showing of exigent circumstances or a showing of consent to the entry.[1] On the record below, the government failed to make a showing of either.[2]

The record does not indicate, and the majority does not contend, that Vaneaton gave his consent for the officers to enter his motel room. In response to a knock, Vaneaton looked through his window, saw the uniformed officers, and opened his door. He was standing inside the room.[3] When asked

by the officers, he said that he was Jack Vaneaton. The officers advised him that he was under arrest, entered the room, and handcuffed him. At no time did Vaneaton ask the officers into his room, step back to allow them to enter,[4] or indicate in any other way that he consented to their entry. Mere submission to the implied authority of uniformed police officers at one's door does not imply consent. *See United States v. Shaibu* 920 F.2d 1423, 1425 (9th Cir.1990).

Finding no consent to enter in this case, the majority manufactures a third exception to *Payton's* firm line, arguing that Vaneaton "voluntarily exposed" himself to arrest. However, the decisions of the Supreme Court and this Circuit do not support the existence of a "voluntary exposure" exception.

The Supreme Court reiterated its *Payton* holding in *New York v. Harris,* 495 U.S. 14, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990). The facts in *Harris* were simple, and remarkably like the case at bench: "When the police arrived, they knocked on the door, displaying their guns and badges. Harris let them enter. Once inside, the officers read Harris his rights ..." *Id.* at 15–16, 110 S.Ct. at 1642. The Court accepted the trial court's finding that Harris did not consent to the officers' entry into his home, and held, "It is

---

1. The Court stated, *"Absent exigent circumstances,* [the] threshold may not reasonably be crossed without a warrant." *Payton,* 445 U.S. at 590, 100 S.Ct. at 1382 (emphasis added). The Court implicitly held that warrantless arrests inside the home were permissible when police entry into the home was consensual. "[W]e are dealing with entries into homes make without the consent of any occupant." *Id.* at 583, 100 S.Ct. at 1378.

2. As an alternative to its "doorway exposure" argument, the government also argued that exigent circumstances justified the arrest. The majority shuns this argument, as well it should.

The behavior of the two uniformed officers who approached Vaneaton's door belies any exigency. They approached and knocked with their guns holstered. Vaneaton could not have escaped. A third officer was stationed in front of the motel room and a fourth at the back of the motel, the only other exit from Vaneaton's room. With Vaneaton completely surrounded and unable to escape, there was nothing to prevent the officers from obtaining a telephonic warrant for his arrest. This also is not a drug case in which there may be some justifiable apprehension that

evidence might be flushed down the toilet or otherwise destroyed. Thus, nothing in the record suggests that exigent circumstances existed in this case.

3. The majority states that, "At the moment of his arrest, Vaneaton was standing at the doorway but just inside the threshold." Under our circuit law, it is unquestioned that Vaneaton was arrested within his home. "In these circumstances [where the officers are outside and the suspect is inside his home], it is the location of the arrested person, and not the arresting agents, that determines whether an arrest occurs within the home." *United States v. Johnson,* 626 F.2d 753, 757 (9th Cir.1980), *aff'd,* 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982). *See also, United States v. Al–Azzawy,* 784 F.2d 890, 892–93 (9th Cir.1985), *cert. denied,* 476 U.S. 1144, 106 S.Ct. 2255, 90 L.Ed.2d 700 (1986).

4. This case is distinguishable from *United States v. Garcia,* 997 F.2d 1273, 1281 (9th Cir.1993), where the court found that the defendant had consented to police entry of his apartment by stepping back and saying "okay" in response to a police request to talk.

also evident, in light of *Payton*, that arresting Harris in his home without an arrest warrant violated the Fourth Amendment." *Id.* at 16–17, 110 S.Ct. at 1642.

The sanctity of the firm line at the doorway is evident when one considers the result in *United States v. Santana*, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976). There the Court upheld the warrantless arrest of a defendant who was standing within the frame of her doorway as the officers approached, and who then retreated into her home, where the officers followed and arrested her. The Court held · that the defendant, who was standing on her threshold, was in a "public place," where "[s]he was not merely visible to the public but was exposed to public view, speech, hearing, and touch as if she had been standing completely outside her house." *Id.* at 42, 96 S.Ct. at 2409.[5]

Ignoring the firm line drawn by *Payton*, the majority contends that Vaneaton, while not in a "public place" like the *Santana* defendant, voluntarily relinquished any reasonable expectation of privacy when he opened the door in response to the police knock. In reaching this conclusion the majority relies principally on *United States v. Johnson*, 626 F.2d 753 (9th Cir.1980), *aff'd*, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982), and *United States v. Whitten*, 706 F.2d 1000 (9th Cir.1983); *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984).

In *Johnson*, the police were found to have acted illegally in making their arrest, where the defendant opened his door in response to a knock by police officers who gave fictitious names. This court held, "In light of the strong language by the Court in *Payton*, emphasizing the special protection the Constitution affords to individuals within their homes, we find that the warrantless arrest of Johnson, while he stood within his home, after having opened the door in response to false identification by the agents, constituted

a violation of his Fourth Amendment rights." *Id.* at 757.

While *Johnson* suggests that a contrary result might obtain if the police had not used subterfuge, it did not so hold. Nor has this court ever so held.

In *Whitten*, the court upheld the warrantless arrest of defendant Gaiefsky, · who opened the door of his hotel room, but was standing "in the doorway" when arrested. 706 F.2d at 1015. *Whitten* distinguished Gaiefsky's arrest from those in *Payton* by noting that, "A doorway … *unlike the interior of a hotel room*, is a public place." *Id.* (emphasis added). Necessarily implicit in the *Whitten* decision is the conclusion that, had Gaiefsky been standing inside, as Vaneaton was, the warrantless arrest would not have been legal.[6]

In *United States v. Al–Azzawy*, 784 F.2d 890, 895 (9th Cir.1985), *cert. denied*, 476 U.S. 1144, 106 S.Ct. 2255, 90 L.Ed.2d 700 (1986), this court reversed the conviction of a defendant who was arrested when he stepped outside of his trailer in response to an order given' over a bullhorn by police, who had completely surrounded the dwelling and who had their weapons drawn. In finding an illegal arrest, the court held that the defendant "did not voluntarily expose himself to [police] view or control *outside his trailer* but only emerged under circumstances of extreme coercion." *Id.* at 893 (emphasis added). *Al–Azzawy*, which is fully consistent with *Santana*, makes clear that one may voluntarily expose oneself to arrest only by stepping *outside* of one's home not by remaining within it.[7]

Thus, *Johnson* and subsequent Ninth Circuit cases do not stand for the proposition that anytime one "voluntarily" opens the door in response to a knock by uniformed police officers, one voluntarily exposes oneself to warrantless arrest. This court has consistently reaffirmed the line drawn by the

---

5. The Court justified the officers' actual entry into the defendant's home under the doctrine of hot pursuit.

6. As in the instant case, there is no indication in *Whitten* that the police used subterfuge to get the defendant to open his door.

7. *United States v. Botero*, 589 F.2d 430 (9th Cir. 1978), *cert. denied*, 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1045 (1979), also cited by the majority in support of its opinion, was decided before *Payton*.

Supreme Court at the entrance to the home. *See Shaibu,* 920 F.2d at 1426; *Al–Azzawy,* 784 F.2d at 893 n. 1; *Johnson,* 626 F.2d at 753. The majority's contrary conclusion is clearly inconsistent with the Supreme Court's decision in *Payton.*[8]

The majority's opinion is also bad policy. It will have the effect of discouraging private citizens from answering knocks on the door by uniformed police officers, by subjecting citizens to warrantless arrests inside their own homes, stemming from nothing more than the exercise of common courtesy in answering a police officer's knock on the door. Indeed, it provides a justification for refusing to answer a police officer's knock.[9] The result is bound to make routine police investigation more difficult and further to strain relations between the citizenry and police.

While making police work more difficult, the majority's decision simultaneously erodes the privacy interests protected by the Fourth Amendment. The majority has, quite literally, opened the door to warrantless invasions of the home, ignoring the Supreme Court's warning that "the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'" *Payton,* 445 U.S. at 585, 100 S.Ct. at 1379 (quoting *United States v. United States District Court,* 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752 (1972)).

Because the police crossed *Payton's* bright line and, in doing so, violated Vaneaton's Fourth Amendment rights, I would vacate Vaneaton's conviction and reverse the district court's order denying his motion to suppress the evidence obtained as the fruit of this unconstitutional conduct.

8. Even if the majority were correct that one voluntarily exposes oneself to arrest by opening one's door, our opinion in *Shaibu* suggests that Vaneaton's behavior in this case was not voluntary. In *Shaibu,* which followed *Johnson* by a decade, this court held that consent to police entry of a dwelling could not be inferred where the defendant met the police outside his apartment, then walked back into the apartment, leaving the door open as the detectives followed him inside. 920 F.2d at 1423. Relying on *Payton,* this court noted, "We do not expect others to walk in to our homes, even if the door is open, without first requesting permission to enter." *Id.* at 1427. The court also noted that the mere presence of police may rob the defendant's actions of their consensual or voluntary character:

> In light of the standard of this Circuit, that "[c]oercion is implicit in situations where consent is obtained under color of the badge," we interpret failure to object to the police officer's thrusting himself into Shaibu's apartment as

more likely suggesting submission to authority than implied or voluntary consent.

*Id.* (citations omitted). Here, Vaneaton saw the police officers through his window before opening the door; his response, opening the door in response to their knock, was obtained under color of the badge.

9. The "voluntary exposure" exception to the *Payton* rule also introduces confusion, rather than offering clear guidance to the police. Undoubtedly, we will soon be facing issues of whether appearing at a closed screen door, or a glass door, or even an open window is sufficient to trigger the voluntary exposure exception. Courts will also have to decide how far inside the home and away from the doorway a citizen must be to escape the voluntary exposure exception. Is it inches? Is it two feet, five feet, 10 feet? Would it be sufficient, regardless of the distance from the doorway, if the suspect were visible through an open doorway with the naked eye? Would the use of binoculars void the exception?