# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

No. 03-1530

SEAN HADLEY,

Plaintiff-Appellant,

v.

HILDA WILLIAMS,

Defendant-Appellee.

_____

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 1:01-CV-153—**William C. Lee**, Judge.

_____

SUBMITTED MARCH 25, 2004—DECIDED MAY 14, 2004

_____

Before POSNER, DIANE P. WOOD, and WILLIAMS, Circuit
Judges.

POSNER, Circuit Judge. In this suit for damages under 42
U.S.C. § 1983, Sean Hadley claims that an Indiana police
detective named Hilda Williams caused him to be arrested
in violation of his Fourth Amendment rights. The district
court granted summary judgment in favor of the defendant,
and Hadley appeals. We construe the facts as favorably to
him as the record permits, as we are required to do when an
appellant is challenging the grant of summary judgment
against him. E.g., Mattson v. Caterpillar, Inc., 359 F.3d 885,
888 (7th Cir. 2004).

After receiving multiple reports that Hadley had had sex with minors, detective Williams ordered police to bring him in for questioning. He was living in his mother's house at the time and Williams phoned her and asked whether she'd be willing to permit the police to enter her house to arrest her son. She replied, only if they had a warrant, and Williams said, "Yes, we've got everything we need. It's all covered." So the mother agreed—but Williams did not in fact have a warrant.

The mother didn't want to be at home when her son was arrested, so at Williams's suggestion she sent her daughter, Hadley's sister, to the house to let the police in. When the police approached the house, Hadley saw them and told his sister, "I'm going in my room. Answer the door. Just tell them I ain't here." The sister opened the door to the police, who entered the house and, once inside, saw Hadley through the open door to his bedroom, went in, and arrested him. He was charged with and convicted of sexual offenses and sentenced to 20 years in prison. If the arrest was illegal, he is entitled to damages for the violation of his Fourth Amendment rights, though his conviction and sentence would be unaffected.

To arrest a person in his home without a warrant is normally a violation of the Fourth Amendment even if there is probable cause to arrest him, which clearly there was here. E.g., *Payton v. New York*, 445 U.S. 573, 585-86 (1980); *United States v. Limares*, 269 F.3d 794, 799 (7th Cir. 2001). But there are exceptions, such as consent by either the owner of the home or the arrested person himself. *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990); *United States v. Melgar*, 227 F.3d 1038, 1041 (7th Cir. 2000). Hadley's mother could give consent to the police to enter her home, but she didn't—not effective consent, at any rate. For her consent was conditioned on the police having a warrant, and they didn't; that at least is the natural interpretation of the facts as we have recited them.

Often it is irrelevant to the question of consent whether there was a warrant or not. A valid warrant is an independent basis for arrest, making consent irrelevant. Indeed, if there is a warrant, it will normally provide the only basis for the arrest because it will make consent, if given, involuntary; Hadley's mother could not refuse to allow the police to execute a warrant, *Bumper v. North Carolina*, 391 U.S. 543, 548-50 (1968)—could not, in short, withhold her consent. There may be cases in which upon being shown the warrant the individual who is authorized to permit the search or seizure decides to consent in the sense of forgoing any right to challenge the warrant's adequacy; and then the search or seizure would be justified by consent. But if as in *Bumper* itself, and in this case as well it seems, there is no warrant or, as in *United States v. Nafzger*, 965 F.2d 213, 216 (7th Cir. 1992) (per curiam), no valid or applicable warrant (the warrant might not be broad enough to cover what the police wanted to search for or seize), consent is vitiated: vitiated not only by the claim of the police to have a warrant—as long as Hadley's mother believed the claim, and there is no reason to doubt that she did, her consent to the search was involuntary and does not bar a challenge to the lawfulness of the arrest—but also by fraud.

Although "the law permits the police to pressure and cajole, conceal material facts, and actively mislead," *United States v. Rutledge*, 900 F.2d 1127, 1131 (7th Cir. 1990), it draws the line at outright fraud, as where police extract a confession in exchange for a false promise to set the defendant free. *Id.* at 1129-30. The consent of Hadley's mother was procured by an outright and material lie, and was therefore ineffectual. The case is unlike *United States v. Larson*, 978 F.2d 1021, 1023-24 (8th Cir. 1992), where consent was held to be voluntary because the police truthfully said they were going to seek a warrant. The person asked in that situation to consent to a search or seizure could make a

judgment whether to wait and see whether a warrant would be issued or to save the police the trouble in the hope of obtaining favorable treatment by being cooperative. See also *United States v. Perez-Montañez*, 202 F.3d 434, 438-39 (1st Cir. 2000).

Nor is it clear that Hadley consented to the entry of the police when he told his sister, "I'm going in my room. Answer the door. Just tell them I ain't here." The fact that a person answers a knock at the door doesn't mean that he agrees to let the person who knocked enter. *Sparing v. Village of Olympia Fields*, 266 F.3d 684, 688-90 (7th Cir. 2001); *United States v. Berkovitz*, 927 F.2d 1376, 1387 (7th Cir. 1991); *United States v. McCraw*, 920 F.2d 224, 229-30 (4th Cir. 1990). And so if you tell someone "answer the door," it doesn't necessarily mean that you're telling him to let the person in. We do not know what Hadley's sister understood him to be telling her, although she did report that he was "disgusted" that she had let the police in, which cuts against an inference that he had, or would reasonably be understood to have, authorized her to let them in. *Stoner v. California*, 376 U.S. 483, 489 (1964); *Bolden v. Southeastern Pennsylvania Transportation Authority*, 953 F.2d 807, 826 (3d Cir. 1991) (en banc); *United States v. Baswell*, 792 F.2d 755, 759 (8th Cir. 1986). We also don't know what the police said to her when she opened the door. It is for the trier of fact to determine whether she reasonably understood her brother to mean that she could let the police have, as it were, the run of the house.

We are mindful of cases in other circuits which hold that when the front door swings open in response to the knock of the police, the police can, by virtue of the "plain view" doctrine, seize anything they see through the open doorway, since by opening the door the person who opened it consented to their presence on the threshold. *United States v.*

*Gori*, 230 F.3d 44, 54 (2d Cir. 2000); *United States v. Vaneaston*, 49 F.3d 1423, 1427 (9th Cir. 1995). But those decisions, in addition to being contrary to the law of this circuit as enunciated in *Sparing* and *Berkovitz*, are inconsistent with the spirit of *Payton v. New York*. Since few people will refuse to open the door to the police, the effect of the rule of *Gori* and *Vaneaston* is to undermine, for no good reason that we can see, the principle that a warrant is required for entry into the home, in the absence of consent or compelling circumstances. Those cases equate knowledge (what the officer obtains from the plain view) with a right to enter, and by doing so permit the rule of *Payton* to be evaded.

Which is not to say that knowledge obtained by the plain view from the threshold cannot lawfully be used. If the officer knocks, sees something inside when the door is opened, and then turns on his heel and uses the information he's just obtained to get a warrant, no one's rights have been violated. But that is not what happened here. It is also true that if having seen from the threshold contraband, evidence of crime, or a person whom they have probable cause to believe has committed a crime and should be arrested, the police reasonably fear that before they can obtain a warrant the contraband or evidence will be destroyed or the criminal flee the nest, the case becomes one of "exigent circumstances" and the police can take steps to secure the evidence or the person. *Welsh v. Wisconsin*, 466 U.S. 740, 749-50 (1984); *United States v. Santana*, 427 U.S. 38, 42-43 (1976); *United States v. McNeil*, 77 F.3d 938, 946 (7th Cir. 1996). But the state does not argue that this is such a case.

Summary judgment should not have been granted. The judgment is reversed and the case remanded for further proceedings consistent with this opinion. The principles on which we reverse are well settled, which precludes a defense of qualified immunity. *Saucier v. Katz*, 533 U.S. 194,

201 (2001); *Sullivan v. Ramirez*, 360 F.3d 692, 696-97 (7th Cir. 2004); *Sparing v. Village of Olympia Fields, supra*, 266 F.3d at 687.

REVERSED AND REMANDED.

A true Copy:

Teste:

_____

*Clerk of the United States Court of Appeals for the Seventh Circuit*