**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellant,*

            v.

DARRELL KUNEKI QUAEMPTS,
            *Defendant-Appellee.*

No. 03-30471

D.C. No.
CR-03-02028-EFS

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Edward F. Shea, District Judge, Presiding

Argued and Submitted
September 15, 2004—Seattle, Washington

Filed May 31, 2005

Before: Mary M. Schroeder, Chief Judge,
A. Wallace Tashima, and Jay S. Bybee, Circuit Judges.

Opinion by Chief Judge Schroeder

## COUNSEL

Robert A. Ellis, Assistant United States Attorney, Yakima, Washington, for the plaintiff-appellant.

Rebecca L. Pennell, Federal Defenders of Eastern Washington and Idaho, Yakima, Washington, for the defendant-appellee.

---

## OPINION

SCHROEDER, Chief Judge:

Darrell Quaempts' trailer home was so small that he could open the front door while lying in his bed. His doing so on one unfortunate occasion, in response to the knock of Yakima Nation police officers, resulted in his warrantless arrest for sexual assault.

The government now appeals from the district court's order granting the defendant's motion to suppress the statement he made immediately following the arrest. The district court held that the police required a warrant before arresting Quaempts in his home. We affirm.

The government contends on appeal that when Quaempts opened the door to the officers, he waived any expectation of privacy in his home. It relies on our majority opinion in *United States v. Vaneaton*, 49 F.3d 1423 (9th Cir. 1995), holding that an individual who opens the door to police officers, and stands on the threshold of his home, may be arrested without a warrant to enter the home, because the threshold of the home is a public place. Quaempts was not standing in the doorway of his home, however, he was in his bed. By reaching over and opening the door he did not waive the expectation of privacy expressly guaranteed by the Fourth Amendment to all persons to be secure in their houses. We therefore affirm the district court's order.

The material facts, including the existence of probable cause and the absence of any exigent circumstances, are not

disputed. At about 8:00 p.m. on December 7, 2001, Teresa Compo arrived at a hospital in Toppenish, Washington, claiming that she had been raped by Quaempts. Compo described to several police officers the general location of the trailer home where the assault had taken place. Following Compo's directions, at least four officers in two cars went to Quaempts' trailer. When the officers arrived, they looked through the window and saw Quaempts in his bed. Sergeant Hoptowit then knocked on the door and said "Darrell Quaempts, police officer. I need to talk to you." Quaempts responded by reaching over from his bed and opening the door.

Sergeant Hoptowit, from outside the trailer, first told Quaempts that he was being placed under arrest for sexual assault. Quaempts asked who made the complaint, and was told it was Teresa Compo. According to the officers, Quaempts responded with: "Shit she came here. I didn't." Hoptowit then instructed Quaempts to get out of bed and get dressed. Quaempts cooperated, and after stepping out of the trailer, was placed in handcuffs and taken to jail.

The police without a warrant then seized several items from the trailer. The government agreed, however that these cannot be offered during its case in chief.

At issue here is the admissibility of Quaempts' statement, made after his warrantless arrest while he was inside the trailer home. The question is whether by knowingly opening the door to the police knock, while remaining in bed, Quaempts waived any expectation of privacy in his house.

[1] The Fourth Amendment ensures that "[t]he right of the people to be secure in their . . . houses . . . shall not be violated." *Silverman v. United States*, 365 U.S. 505, 511 (1961). The core of the amendment establishes "the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Id.* The Fourth Amendment's

express right to be free from warrantless arrests inside one's home was reaffirmed by the Supreme Court a quarter century ago in *Payton v. New York*, 445 U.S. 573, 576 (1980). The Court invalidated a New York statute authorizing warrantless entry into private residences for routine felony arrests.

In *Payton*, the police broke down an apartment door when there was no response to their knock. In a companion case, defendant's three-year-old son opened the door allowing the police to see the defendant sitting in bed, and the police then arrested him. The Court held that the arrests were an illegal invasion of a zone of privacy, a zone "bounded by the unambiguous physical dimensions of an individual's home." *Id*. at 589.

*Payton* would appear to control this case and compel the district court's ruling, but for one factual difference. Here, the defendant himself, albeit in his bed, opened the door to the officers. The government thus argues that the defendant waived any privacy rights when he opened the door. It relies upon *Vaneaton*, 49 F.3d 1423.

**[2]** In *Vaneaton,* we extended *United States v. Santana*, 427 U.S. 38, 42 (1976). The Court in *Santana* established that the open doorway of a private residence is not a private place but a public one, and a person already standing in that open doorway when the police arrive has no expectation of privacy. In *Vaneaton* a majority of the panel concluded that when a person opens the door in response to a police knock, and thereby stands on the threshold of the home, that person is no longer in a private place. The critical fact in both *Santana* and *Vaneaton* was that the defendant was not in the house, but in the doorway and hence in a public, not a private place.

**[3]** Quaempts, however, was in his bed, the sanctuary of the right to privacy. *See Lawrence v. Texas*, 539 U.S. 558 (2003). To extend the holding of *Vaneaton* beyond the threshold into the interior of the home would do violence to the principles

laid down in *Payton* that established a zone of privacy inside the physical dimensions of one's home. *Payton*, 445 U.S. at 589. The Court there drew "a firm line at the entrance to the house," without regard to the size of the dwelling. *Id.* at 590.

**[4]** It does not matter that the officers did not actually enter the house to make the arrest. As this court has stated, "it is the location of the arrested person, and not the arresting agents, that determines whether an arrest occurs within a home." *United States v. Johnson*, 626 F.2d 753, 757 (9th Cir. 1980). Because Quaempts did not take himself outside the physical zone of privacy of the house by going to the threshold of his house or to any other public place, the officers could not make a lawful warrantless arrest.

**[5]** In the alternative the government suggests that by opening the door and offering no objection to the warrantless arrest, Quaempts consented to it. The government offers no authority to support its theory that an individual must offer resistance to a warrantless arrest in his home in order to invoke the protection of the Fourth Amendment. The suggestion is belied by the language and purpose of the Fourth Amendment's "right of the people to be secure in their houses."

The order of the district court that the police required a warrant for Quaempts' arrest and suppressing Quaempts' post-arrest statement is AFFIRMED.