Affirmed and Memorandum Opinion filed May 30, 2006









Affirmed and Memorandum Opinion filed May 30, 2006.

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-04-00878-CR

_______________

 

ALBERT O=BRYANT
TWYMAN, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 208th District Court

Harris County, Texas

Trial Court Cause No. 954,761

                                                                                                                                               


 

M E M O R A N D
U M  O P I N I O N

 

Appellant, Albert O=Bryant Twyman, appeals his conviction
for possession of a controlled substance. 
In five issues, appellant contends that the trial court erred by failing
to strike fifteen prospective jurors for cause, the State made improper jury
arguments during the punishment and guilt/innocence phases of trial, and the
trial court erred by denying appellant=s pretrial motion to suppress.  Because all dispositive issues are clearly
settled in law, we issue this memorandum opinion and affirm. See Tex. R. App. P. 47.4. 

 








I.  Background

On July 10, 2003, Richard Corrales, an undercover Houston
Police Officer, arranged to purchase marijuana from Donald Babino (ABabino@). 
Babino said that he knew where he could get marijuana and accepted
twenty dollars from Officer Corrales. 
Babino got in Officer Corrales=s vehicle and directed him to a
nearby apartment complex.  Officer
Corrales remained in the vehicle and watched while Babino climbed the stairs to
an upper-level apartment.  Babino,
appellant, and Officer Corrales disagreed at trial as to which of the
subsequent events occurred inside the apartment and which occurred outside the
apartment within the view of Officer Corrales. 
Nonetheless, they all agreed that Babino gave appellant the twenty
dollars, and appellant left to get marijuana. 
They also agreed that appellant returned with a plastic bag of marijuana
and gave it to Babino, who got back in Officer Corrales=s vehicle.  Officer Corrales gave a Abust@ signal while driving away from the
apartment complex.  Uniformed officers
directed occupants of the vehicle to stop and arrested Babino.  They then returned to the apartment complex
to arrest appellant.  When the police
searched appellant was searched incident to the arrest, they found crack
cocaine was found in his pocket. 

A jury found appellant guilty of possession of a controlled
substance.  Appellant pleaded Atrue@ to two enhancement paragraphs, and
the jury assessed punishment at forty-five years= imprisonment.

II.  Challenges for
Cause

In appellant=s first two issues, he contends that the trial court erred by
refusing to strike fifteen prospective jurors for cause.  During voir dire, appellant=s trial counsel explained the
presumption of innocence concept by introducing a Apresumption of innocence scale.@ He described the scale as follows:








Let=s imagine the scale of zero to four
where four is on the other end of the scale is, well, if he sitting there, he
is guilty, okay.  Below that, we have got
the [number] 3.  We have probably the
infinite number of in between.  I think
the math teachers can correct me where he is a little bit guilty; or the
[number] 2, that he is kind of medium; and on the [number] one, well, where
there is smoke, there is fire.  If they
charged him with it, there has got to be something there.  So I think he may be a little bit guilty.
[sic]

After this explanation, appellant=s counsel asked what number each
panel member would assign to appellant. 
Twenty-four of the sixty-five panel members indicated that they would
assign a number other than zero.  Several
of these panel members were struck by agreement or for other reasons, leaving
seventeen that the defense counsel challenged for cause.  The trial court admonished the panel on the
law regarding presumption of innocence and asked the panel members who had
assigned a number other than zero to raise their hands if they still questioned
their ability to presume appellant innocent. 
Two panel members told the court they could not presume appellant
innocent and were struck for cause.  The
trial court denied appellant=s request to strike the remaining fifteen panel members for
cause.

In general, we review the trial court=s denial of a challenge for cause
under an abuse of discretion standard.  Rachal
v. State, 917 S.W.2d 799, 810 (Tex. Crim. App. 1996).  We must view the trial court=s decision in light of voir dire as a
whole to determine whether the trial court had a rational basis for its
conclusion.  Granados v. State, 85
S.W.3d 217, 231 (Tex. Crim. App. 2002). 
We defer to the trial court=s decision to grant or deny a
challenge for cause when the responses of a prospective juror are equivocal,
unclear, or contradictory.  Colburn v.
State, 966 S.W.2d 511, 517B18 (Tex. Crim. App. 1998).








In his first issue, however, appellant argues that the
prospective jurors were biased or prejudiced against appellant as a matter of
law.  When a prospective juror is biased
or prejudiced as a matter of law, he must be excused when challenged, even if
he states he can set aside the bias and provide a fair trial.   Smith v. State,  907 S.W.2d 522, 530 (Tex. Crim. App. 1995);  Williams v. State, 565 S.W.2d 63, 65 (Tex.
Crim. App. 1978).  Courts have found bias
or prejudice as a matter of law when a prospective juror (1) admits his bias
for or against a defendant, (2) admits prejudice against persons who consume
intoxicating beverages when the defendant is charged with an offense involving
alcohol, (3) admits or demonstrates a racial or ethnic prejudice, (4) admits
resentment towards a defendant based on prior contact, or (5) is related to the
State=s primary witness.  Morales v. State, 875 S.W.2d 724,
725  (Tex. App.CFort Worth 1994, no pet.); see
Anderson v. State, 633 S.W.2d 851, 854 (Tex. Crim. App. 1982).  None of these situations is present here. The
panel members did not express or admit to holding a bias or prejudice against
appellant; rather, they assigned numbers based on an erroneous and confusing
explanation as to the law regarding the presumption of innocence.  See Smith, 907 S.W.2d at 530
(distinguishing possible bias or prejudice against the applicable law from the
type of bias or prejudice against a defendant=s person which generally cannot be
rehabilitated). Therefore, the panel members were not biased or prejudiced
against appellant as a matter of law. 
Accordingly, we overrule appellant=s first issue.








In his second issue, appellant argues that the trial court
abused its discretion by failing to grant his challenges for cause .even if the
jurors were not biased or prejudiced as a matter of law.  If a panel member is unwilling to afford a
defendant the presumption of innocence, he may be challenged for cause on the
ground that he is biased or prejudiced against the applicable law.  See Tex.
Crim. Proc. Code Ann. art. 35.16(c)(2); Banda v. State, 890
S.W.2d 42, 55B57 (Tex. Crim. App. 1994).  However, here, appellant=s fictitious Apresumption of innocence scale@ was an incorrect characterization of
the law.  See Morrow v. State, 910
S.W.2d 471, 473 (Tex. Crim. App. 1995) (rejecting appellant=s claim that the trial court erred by
failing to grant a challenge for cause based on bias or prejudice against the
applicable law when appellant=s explanation of the law was incorrect).  Moreover, even if the numbers are interpreted
as indications the panel members had formed conclusions as to appellant=s guilt, it was still within the
trial court=s discretion to qualify them upon a
subsequent determination that they would be able to set aside their opinions
and grant appellant the benefit of the presumption of innocence.  See Smith, 907 S.W.2d at 530; see
also McBride v. State, 7 S.W.2d 1091, 1092B93 (Tex. Crim. App. 1928) (describing
the rationale for the Afundamental distinction@ between holding a prejudice against
a defendant and forming a conclusion as to the guilt or innocence of the
defendant).  

After the trial court admonished the panel members on the law
regarding the presumption of innocence, only two panel members indicated that
they would not be able to grant appellant the benefit of the presumption of
innocence.  Those two panel members were
struck for cause.  It was within the
trial court=s discretion to deny the challenges
for cause with respect to the remaining panel members, all of whom who all
indicated that they would be able to follow the law. Accordingly, we overrule
appellant=s second issue.   

III.  Closing Improper
Argument

In his third and forth issues, appellant contends that the
prosecutor made improper closing argument during both the guilt/innocence and
punishment phases of trial.  The State=s jury arguments must fall within one
of the following categories: (1) summation of the evidence; (2) reasonable
inferences from the evidence; (3) answers to opposing arguments; or (4) pleas
for law enforcement.  Rocha v. State,
16 S.W.3d 1, 21 (Tex. Crim. App. 2000). 
Reversible error results from improper argument only when the argument
is extreme or manifestly improper, injects new facts into the case harmful to
the accused, or violates a mandatory statutory provision. Borjan v. State, 787
S.W.2d 53, 56B57 (Tex. Crim. App. 1990).  In reviewing challenges to a jury argument,
we consider the State=s arguments in the context in which they appear.  Gladdis v. State, 753 S.W.2d 396, 398
(Tex. Crim. App. 1988).

A.        Punishment
Phase Argument

In his third issue, appellant argues that the State
improperly urged the jury to return a punishment verdict based on evidence
outside the record.  During the
punishment phase of trial, the State argued as follows:








He told you on the stand while he was testifying in
the guilt stage of the trial that he contributes to his family by not being
able to keep a permanent job, by not taking care of his kids, paying child
support every month; and he also contributes to his family by dealing crack
cocaine out of the apartment complex that they live in, that they have to live
in each and every day.  That is his
contributions to society and to his family. 

 

Appellant objected on the grounds that the State was misstating the
evidence.  The judge instructed the jury
to remember the testimony they had heard, but overruled the objection.  

At trial, appellant testified that he had sold drugs in his
past.  He further testified that he did
not have steady employment and, therefore, had not been paying he child
support.  He also admitted that he
packaged the cocaine at issue in nineteen separate bags, with all but one bag
containing one crack rock each. 
Appellant did not deny that he was selling the cocaine.  Rather, he admitted that selling drugs was Aeasy money.@ 
Accordingly, we conclude that the State=s argument consisted of a proper
summation along with reasonable inferences drawn from the evidence presented at
trial. Appellant=s third issue is overruled. 


B.        Guilt/Innocence
Phase Argument

In his fourth issue, appellant argues that the State
improperly urged the jury to return a guilty verdict based on the demands and
expectations of the community.  During
the guilt/innocence phase of trial,  the
State argued:

So basically, if you believe [appellant=s] story, you will have to believe him versus three
police officers that have a collective amount of experience of like someC I don=t knowC fifty something years, fifty plus years together, who
take it upon themselves to go day in and day out going to the street, trying to
rid the streets of Harris County, Texas, of drugs.  You know, this isn=t a big kilo case. 
Instead of going out and making that big drug bust, that big deal, they
are going out and doing one drug bust after another, getting one crack rock,
getting one, getting the cocaine off of the street a little bit at a time. And
they are doing that so the people of Harris County, Texas, can have a safer
environment, people like you and you and you, everybody.

 








It is well established that the State may not urge the jury
to return a verdict based on the demands, desires or expectations of the
community.  Borjan, 787 S.W.2d at
56; Cortez v. State, 683 S.W.2d 419, 420B21 (Tex. Crim. App. 1984).  However, the fact that the State refers to
the community during closing argument does not, in and of itself, constitute an
improper appeal to the community=s expectations.  See Caballero v. State, 919 S.W.2d
919, 924 (Tex. App.CHouston [14th Dist.] 1996, pet. ref=d). 
Here, the State did not argue that the community expected the jury to
return a guilty verdict; rather, the State argued that the police officers were
protecting the members of the community including the jurors.  The State=s argument therefore amounted to a
proper plea for law enforcement. 
Accordingly, we overrule appellant=s fourth issue.

IV. Motion to Suppress 

In his fifth issue, appellant contends the trial court erred
in denying his motion to suppress because the cocaine found in his pocket was
the fruit of an unlawful arrest in violation of his state constitutional and
statutory rights against unreasonable searches and seizures.  We review a trial court=s ruling on a motion to suppress
under a bifurcated standard of review.  Carmouche
v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We defer to the trial
court=s determination of facts supported by
the record, especially when the fact findings are based on an evaluation of
credibility and demeanor.  Id.; Guzman
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  If, as in the instant case, the trial court
does not make explicit findings of fact, we must review the evidence in the
light most favorable to the trial court=s ruling and presume the trial court
made the findings supported by the record that buttress its conclusion.  Carmouche, 10 S.W.3d at 327B28.  We review de novo the trial court=s application of law to those facts,
and we must sustain the trial court=s ruling if it is correct under any
theory of law applicable to the case.  Id.
at 327; Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App.
1996).

 








A.        Review of the
Evidence     

At the suppression hearing, Officer Corrales testified that
he was working undercover when he saw appellant accept twenty dollars Officer
Corrales had previously given to Babino for the purpose of purchasing
marijuana. After receiving the money, appellant walked toward the interior of
an apartment complex and returned a short time later with a plastic bag
containing what appeared to be marijuana. 
Appellant handed the bag to Babino outside the apartment complex within
Officer Corrales=s view.  As Babino
walked back toward Officer Corrales=s vehicle with the marijuana, Officer
Corrales observed appellant climbing the stairs toward an apartment.  Babino entered the vehicle, and Officer
Corrales gave his arrest signal as he drove away from the apartment
complex.  Uniformed police officers
stopped the vehicle and arrested Babino. 
Officer Corrales then directed the uniformed officers back to the
apartment complex to arrest appellant.  

Houston Police Officer Thomas Null testified that he and
Officer Corrales were part of a narcotics investigation team.  Officer Null confirmed that he and other
uniformed officers stopped Officer Corrales=s vehicle after learning via radio of
the drug transaction between appellant and Babino.  After the officers arrested Babino, they
returned to the apartment complex.  A
surveillance officer, also part of the investigation team, informed them which
apartment appellant entered.  The
officers knocked on the door of the apartment. 
Appellant answered the door, and Officer Null arrested appellant based
on the description given by Officer Corrales. 
Officer Null crossed the threshold of the entrance of the apartment to
make the arrest.  When he searched
appellant incident to the arrest, he found a bag of crack cocaine in appellant=s pocket.  








Officer Null further testified that the officers did not have
an arrest warrant for appellant when they entered the apartment.  Approximately three to four minutes elapsed
between the time Officer Null first learned of the drug transaction and
appellant=s arrest, and the nearest justice of
the peace was about a ten-minute drive from the apartment complex.  Officer Null did not receive any information
indicating that appellant was attempting to flee or had any weapons.

Babino and appellant also testified at the suppression hearing.  Babino testified that he gave the twenty
dollars to appellant inside the apartment, but appellant delivered the
marijuana outside the apartment.  In
contrast, appellant testified that the entire transaction took place within a
friend=s apartment, outside of the officer=s view.  He further testified that about fifteen
minutes after the dug transaction, he heard a knock on the apartment door.  Appellant answered the door, and three police
officers Abarged@ into the apartment, threw everyone
on the ground, and began searching.    

B.        Application of
the Law to the Facts

To suppress the evidentiary fruit of an unlawful arrest, a
defendant bears the burden to rebut the presumption of proper police conduct.  Torres v. State, 182 S.W.3d 899, 902
(Tex. Crim. App. 2005).  A defendant
meets this initial burden of proof by showing that the seizure occurred without
a warrant.  Id.   The burden then shifts to the State.  Id. The State may prove the
reasonableness of the warrantless seizure by showing that the arrest fell
within one of the statutory exceptions.  Id.

The State argues that the arrest fell within article 14.01(b)
of the Texas Code of Criminal Procedure. 
Article 14.01(b) provides that an officer may arrest an individual
without a warrant for an offense committed in his presence or within his
view.  Tex.
Crim. Proc. Code Ann. art 14.01(b) (Vernon 2005). However, when officers
enter a residence to make a warrantless arrest, the State also must also show
consent or exigent circumstances justifying the entry.  See Tex.
Crim. Proc. Code Ann. art. 14.05 (Vernon 2005).








AHot pursuit@ is an exigent circumstance justifying
a warrantless entry.[1]  Curry v. State, 831 S.W.2d 485, 488
(Tex. App.CHouston [14th Dist.] 1992, pet. ref=d) (citing United States v.
Santana, 427 U.S. 38, 43 (1976)).  To
determine whether the officers= entry into the apartment was justified by hot pursuit, we
must first must consider the seriousness of the crime. See Welsh v.
Wisconsin, 466 U.S. 740, 753 (1984) (holding that the Aapplication of the
exigent-circumstances exception in the context of a home entry should rarely be
sanctioned when there is probable cause to believe that only a minor offense .
. . has been committed@).  Here, appellant
committed the offense of delivery of marijuana in an officer=s presence.  See Tex.
Health & Safety Code Ann. ' 481.120 (Vernon Supp. 2005).  Delivery of marijuana for remuneration is an
offense punishable by imprisonment.  See
id; Tex. Pen. Code Ann. 12.21
(Vernon Supp. 2005).  When an offense is
punishable by imprisonment, the offense is serious enough that officers in hot
pursuit may enter a residence without a warrant and arrest the offender.  See Randolph v. State, 152 S.W.3d 764,
771B72 
(Tex. App.CDallas 2004, no pet.); see also Beaver v.
State, 106 S.W.3d 243, 248B49  (Tex. App.CHouston [1st Dist.] 2003, pet. ref=d) (concluding that hot pursuit
justified police entry into a residence to arrest appellant for possession of
marijuana, a jailable offense).








Next, we consider whether the officers= pursuit was immediate and
continuous.  See Yeager v. State,
104 S.W.3d 103, 106B09 (Tex. Crim. App. 2003) (concluding that hot pursuit was
immediate and continuous pursuit).  Here,
after the drug transaction, police officers immediately pursued and apprehended
both suspects.  While uniformed officers stopped
the undercover agent=s vehicle to apprehend Bambino, a surveillance officer
tracked appellant to the upstairs apartment where appellant was subsequently
arrested.  The fact that appellant
happened to be the second suspect apprehended does not break the continuity of
the officers= overall pursuit.  See Jimenez v. State, 750 S.W.2d 798,
803 (Tex. App.C El Paso 1988, pet. ref=d)(holding that the Aoverall continuity of the pursuit@ is the controlling factor and a
brief gap in observation does not defeat a finding of hot pursuit).  

Moreover, a suspect cannot defeat an arrest set in motion in
a public place by entering a private place. See Santana, 427 U.S. at
43.  Although Officer Null testified that
he had received no information indicating that appellant was attempting to flee
or escape, a finding of hot pursuit does not turn on the subjective intentions
of the suspect, but on whether the officers= pursuit was immediate and
continuous.  See Yeager, 104
S.W.3d at 106B09 
(rejecting the argument that officers were not in hot pursuit when,
although the pursuit was immediate and continuous, there was no evidence that
the suspect was attempting to flee or escape). 
Viewing the evidence in the light most favorable to the trial court=s ruling, appellant=s arrest took place approximately
three to four minutes after the offense. 
The officers reasonably could have reasonably believed that appellant
would have been able to evade arrest if they interrupted the pursuit to obtain
arrest and search warrants.  See
McNairy v. State, 835 S.W.2d 101, 107 (Tex. Crim. App. 1991) (noting that Aan increased likelihood of
apprehending a suspect@ was a factor to be considered in determining the existence
of exigent circumstances).  Therefore,
the trial court could have concluded that exigent circumstances justified the
warrantless entry into the apartment.








Alternatively, the trial court could have concluded that
appellant voluntarily exposed himself to the arrest by freely opening the door
to the police.[2]   See
Cornealius v. State, 900 S.W.2d 731, 734 (Tex. Crim. App. 1995) (citing U.S.
v. Vaneaton, 49 F.3d 1423 (9th Cir. 1995)).   The police have the same right as any
citizen to approach and knock on the front door of a residence.  Id. at 733; Bower v. State, 769
S.W.2d 887, 897 (Tex. Crim. App. 1989), overruled on other grounds, Heitman
v. State, 815 S.W.2d 681 (Tex. Crim. App. 1991).  Once appellant opened the door, he
voluntarily exposed himself in a public place within plain view of the
officers. See Vaneaton, 49 F.3d at 1426B27 (holding that the open threshold
to a residence is a public place); see also Santana, 427 U.S. at 42.
Appellant could  not thereafter defeat
the arrest by retreating back into the apartment. See Santana, 427 U.S.
at 42B43; Cornealius, 900 S.W.2d at
734.  In other words, the trial court
could have concluded that exigent circumstances existed the moment appellant
opened the door and saw the police.  See
Santana, 427 U.S. at 43 (holding that Athe fact that the pursuit here [at
the threshold of a residence] ended almost as soon as it began did not render
it any the less a >hot pursuit= sufficient to justify the warrantless entry@). 
Accordingly, we conclude that appellant=s arrest was lawful, and the trial
court did not err in denying appellant=s motion to suppress. We overrule
appellant=s fifth issue. 

The judgment of the trial court is affirmed.

 

 

/s/        Charles W. Seymore

Justice

 

Judgment rendered
and Memorandum Opinion filed May 30, 2006.

Panel consists of
Justices Hudson, Frost, and Seymore.

Do
Not Publish C Tex.
R. App. P. 47.2(b).     











[1]  Other exigent
circumstances justifying a warrantlesss entry include (1) rendering aid or
assistance to persons whom the officer reasonably believes are in need of
assistance, (2) preventing the destruction of evidence or contraband, and (3)
protecting the officer from persons whom they believe to be present and armed
and dangerous.  See McNairy v. State,
835 S.W.2d 101, 107 (Tex. Crim. App. 1991). 
However, here, the State does not argue, and there is no evidence to
suggest, that appellant=s arrest fell within any of these other
circumstances.   





[2]  The U.S.
United States courts of appeals appear to be split on the issue as to whether
police may cross the threshold of a residence to make an arrest when the door
is voluntarily opened.  Compare U.S.
v. Vaneaton, 49 F.3d 1423, 1426B27 (9th
Cir. 1995) (upholding the warrantless arrest of the defendant when the police
crossed the threshold of a motel room after the defendant voluntarily opened
the door) with Hadley v. Williams, 368 F.3d 747, 750B51 (7th Cir. 2004) (disagreeing with Vaneaton and
holding that a warrant is required for police to cross the threshold of a
residence to make an arrest even when the door is voluntarily opened).  However, appellant does not contend that his
federal constitutional rights were violated. 
The Texas Court of Criminal Appeals appears to have adopted the
reasoning of the Ninth Circuit in Vaneaton to conclude that an officer
may make a valid arrest at the threshold of a dwelling when the suspect
voluntarily opens the door.  See
Cornealius v. State, 900 S.W.2d 731, 734 (Tex. Crim. App. 1995) (citing Vaneaton,
49 F.3d 1423).