898 A.2d 538 (2006)
386 N.J. Super. 1
STATE of New Jersey, Plaintiff-Respondent,
v.
Louis PENALBER, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued October 18, 2005.
Decided May 25, 2006.
*540 Stephen P. Hunter, Assistant Deputy Public Defender, argued the cause for appellant (Yvonne Smith Segars, Public Defender, attorney; Mr. Hunter, of counsel and on the brief).
Jeanne Screen, Deputy Attorney General, argued the cause for respondent (Peter C. Harvey, Attorney General, attorney; Ms. Screen, of counsel and on the brief).
Before Judges SKILLMAN, AXELRAD and LEVY.
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
This appeal involves the validity of a warrantless entry into a residence to make an arrest. The trial court held that the entry was valid under the "consent-once-removed" doctrine, under which consent to a police officer's initial entry into a private place may provide authorization for a subsequent entry if the separate entries can be viewed as components of a single, continuous and integrated police action. Alternatively, the court held that the warrantless entry was valid because the police observed the arrestee through an open door before entering the residence. We conclude that the warrantless entry into the residence was not valid under either of the theories the trial court relied upon. Therefore, we reverse the denial of defendant's motion to suppress.
Defendant was indicted for possession of heroin, in violation of N.J.S.A. 2C:35-10a(1); possession of heroin with the intent to distribute, in violation of N.J.S.A. 2C:35-5a(1) and N.J.S.A. 2C:35-5b(3); possession of heroin within 1,000 feet of school property with the intent to distribute, in violation of N.J.S.A. 2C:35-7; possession of cocaine, in violation of N.J.S.A. 2C:35-10a(1); possession of cocaine with the intent to distribute, in violation of N.J.S.A. 2C:35-5a(1) and N.J.S.A. 2C:35-5b(2); possession of cocaine within 1,000 feet of school property with the intent to distribute, in violation of N.J.S.A. 2C:35-7; distribution of cocaine, in violation of N.J.S.A. 2C:35-5a(1) and N.J.S.A. 2C:35-5b(3); and distribution of cocaine within 1,000 feet of school property, in violation of N.J.S.A. 2C:35-7.
Defendant filed a motion to suppress the evidence against him. After an evidentiary hearing, the trial court denied the motion.
Defendant then pled guilty to the charge of possession of cocaine with the intent to distribute pursuant to a plea bargain that preserved his right to appeal the denial of the motion to suppress. Under the plea bargain, the State agreed to dismiss the other counts of the indictment and recommend that defendant be sentenced to a six-year term of imprisonment, with three years of parole ineligibility. The trial court sentenced defendant in conformity with the plea bargain.
Defendant's arrest and the discovery of the drugs that were the subject of his motion to suppress followed an undercover purchase of cocaine by Detective Flatley of the Elizabeth Police Department. Flatley and Detective Smith went to an apartment building in Elizabeth, dressed in street clothes, in the late afternoon of March 20, 2002. The apartment building contained two units, one on the first and the other on *541 the second floor, with common access through an interior hallway. A stairway led from the hallway to the second floor apartment.
Flatley approached the front door, which was made entirely of glass, while Smith stayed on the sidewalk. Looking through the door into the hallway, Flatley saw a man later identified as Carlos Lescano engaged in a drug transaction with an unidentified purchaser. Omar Garcia, who Flatley knew to be a resident of the second floor apartment, motioned to Flatley to remain outside until the sale to the other purchaser was completed.
When the other purchaser left, Garcia motioned Flatley to enter the hallway. Flatley then purchased two vials of cocaine from Lescano. While this transaction was being conducted, Flatley saw a third man on the second floor landing, looking down to the first floor hallway.
After Flatley purchased the two vials of cocaine, he and Smith, together with the backup officers involved in the investigation, returned to the police station. The officers discussed Flatley's undercover purchase and decided to return to the apartment building to arrest Lescano.[1] According to Flatley, he expected Lescano still to be in the hallway where Flatley had purchased the drugs.
Flatley and five other officers returned to the apartment building between thirty and forty-five minutes after Flatley had made the undercover purchase from Lescano. The officers walked through the unlocked front door into the hallway, which was empty, and then walked up the stairs to the second floor. When the officers reached the top of the stairs, the door to the apartment was open and they could see Lescano sitting in a chair in the living room watching television. The officers announced their presence and walked through the open door to arrest Lescano.
As they entered, one of the officers, Detective Kevin McDonough, walked into a bedroom to the right of the front door to be sure there were no other suspects in the apartment. McDonough found defendant sitting on the edge of a bed using a razor blade to cut up cocaine. After his arrest, defendant consented to a search of the apartment, which resulted in the discovery of heroin and drug paraphernalia.
The trial court concluded in an oral opinion that the police officer's entry into the hallway and stairway leading to the second floor apartment to arrest Lescano was valid under the "consent-once-removed" doctrine, because Lescano and Garcia had consented to Detective Flatley's initial entry into the hallway only thirty to forty-five minutes earlier. Alternatively, the court concluded that the common hallway was not a private place, and therefore, defendant did not have a reasonable expectation of privacy in the hallway or the staircase. The court did not separately consider whether the officers' observation of Lescano from the stairway landing into the apartment justified their entry into the apartment to arrest Lescano. The court also concluded that the search of the bedroom that resulted in the discovery of defendant cutting cocaine constituted a reasonable measure for the protection of the officers entering the apartment.
We conclude that this case does not fit within the "consent-once-removed" doctrine and that the warrantless entry into the second floor apartment violated the Fourth Amendment to the United States *542 Constitution and Article I, paragraph 7 of the New Jersey Constitution.

I
"A basic principle of Fourth Amendment law is that `searches and seizures inside a home without a warrant are presumptively unreasonable.'" State v. Henry, 133 N.J. 104, 110, 627 A.2d 125 (1993) (quoting Payton v. New York, 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639, 651 (1980)), cert. denied, 510 U.S. 984, 114 S.Ct. 486, 126 L.Ed.2d 436 (1993). "The warrant requirement safeguards citizens by placing the determination of probable cause in the hands of a neutral magistrate before an arrest or search is authorized." Ibid. The State bears the burden of demonstrating that a warrantless arrest or search falls within an exception to the warrant requirement. State v. Frankel, 179 N.J. 586, 598, 847 A.2d 561 (2004).
The State relies primarily upon the "consent-once-removed" exception to the warrant requirement recognized in Henry to justify the warrantless entry into the second floor apartment to arrest Lescano. In Henry, a police officer made an undercover buy of cocaine from the defendant in his apartment. After the officer completed the transaction, he notified his backup team, which was waiting a short distance away. 133 N.J. at 107-08, 627 A.2d 125. When those officers arrived at the apartment to arrest defendant, they encountered defendant and two other suspects, one of whom fled into a bedroom, where she was apprehended and found in possession of a substantial quantity of cocaine. In upholding the warrantless entry into the apartment, the Court stated:
[The undercover officer's] initial entry into the apartment was consensual. . . . As a result of that entry, probable cause  the commission of a crime  arose, justifying an arrest.
. . . .
Although no fresh or new invitation to enter the apartment was given to the police, the entry [of the backup team] occurred shortly after the initial consent had been given for the initial entry, and was accomplished without force or violence.
. . . .
[T]he separate entries can be viewed as components of a single, continuous, and integrated police action and were not interrupted or separated by an unduly prolonged delay.
[Id. at 113-16, 627 A.2d 125.]
In reaching this conclusion, the Court emphasized "the short amount of time and continuity between the two entries[.]" Id. at 118, 627 A.2d 125. The Court also noted that other courts had "carefully circumscribed the reach of the consent-once-removed doctrine." Id. at 115, 627 A.2d 125.
We conclude that the warrantless entry into the second floor apartment that led to defendant's arrest cannot be sustained under the consent-once-removed doctrine. A significantly longer period of time elapsed in this case than in Henry between the undercover officer's entry into the apartment house to buy drugs and the backup officers' entry to arrest Lescano. Although in Henry it was only fifteen to twenty minutes between the undercover officer's initial entry and the backup officers' return to make the arrest and only five minutes between the undercover officer's call to the backup team and the arrest, id. at 113, 627 A.2d 125, thirty to forty-five minutes elapsed between Flatley's undercover buy and his return to the apartment house with other officers to arrest the sellers. Furthermore, during that intervening period, Flatley and the other *543 officers returned to the police station to discuss what course of action to take. Consequently, Flatley's initial entry into the apartment to buy drugs and the second entry to arrest Lescano cannot be viewed, as in Henry, as "components of a single, continuous, and integrated police action[.]"[2]Id. at 116, 627 A.2d 125.

II
We next consider the trial court's alternative holding that the common hallway and stairway to the second floor apartment was not a private place protected by the Fourth Amendment and Article I, paragraph 7 of the New Jersey Constitution and that it was proper for the police to enter the apartment to arrest Lescano because they observed him through an open door.

A
Our courts have not decided whether a common hallway in a two-unit apartment building is within the zone of privacy protected by the Fourth Amendment and the parallel provision of the New Jersey Constitution. However, the Supreme Court has indicated that generally in "multi-occupancy premises . . . none of the occupants can have a reasonable expectation of privacy in areas that are also used by other occupants." State v. Johnson, 171 N.J. 192, 209, 793 A.2d 619 (2002) (quoting State v. Ball, 219 N.J.Super. 501, 506-07, 530 A.2d 833 (App.Div.1987)). In United States v. Holland, 755 F.2d 253, 255-56 (2d Cir.), cert. denied, 471 U.S. 1125, 105 S.Ct. 2657, 86 L.Ed.2d 274 (1985), the Second Circuit expressly held that the police may enter a common hallway in a two-unit apartment house without a warrant because a tenant can have no reasonable expectation of privacy in an area frequented by occupants of the other apartment unit, the landlord, deliverymen and visitors. Other federal courts have reached the same conclusion. See, e.g., United States v. Mendoza, 281 F.3d 712, 715 (8th Cir.) (two-unit apartment), cert. denied, 537 U.S. 1004, 123 S.Ct. 515, 154 L.Ed.2d 401 (2002); United States v. Acosta, 965 F.2d 1248, 1251-53 (3d Cir.1992) (three-unit apartment).
However, some courts have held that the occupants of an apartment house have a reasonable expectation of privacy in a common hallway, at least where the door leading into the hallway is kept locked. See, e.g., United States v. Carriger, 541 F.2d 545, 549-52 (6th Cir.1976); People v. Killebrew, 76 Mich.App. 215, 256 N.W.2d 581, 583 (1977). A panel of this court appears to have adopted this view. See State v. Nunez, 333 N.J.Super. 42, 51, 754 A.2d 581 (App.Div.2000) (noting that "the fact of whether a door is locked or unlocked [is] a far more reliable predictor of a reasonable expectation of privacy than the size of the building in which one resides"), certif. denied, 167 N.J. 87, 769 A.2d 1050 (2001).
In any event, it is unnecessary for us to decide whether the occupants of the second floor apartment had a reasonable expectation of privacy in the hallway and stairway leading to the second floor, because the police entry into the apartment would be invalid even if the police were in a public place when they discovered Lescano.

B
In Payton v. New York, supra, 445 U.S. at 576, 100 S.Ct. at 1375, 63 L.Ed.2d at 644, the Court held that the Fourth Amendment *544 "prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." Payton involved a consolidated appeal from the convictions of two defendants, Payton and Riddick. The facts in Riddick closely resembled this case. After the police obtained evidence establishing probable cause to arrest Riddick, they went to his house without a warrant to make the arrest. When they knocked on the front door, Riddick's young son opened the door, and the police observed Riddick sitting in a bed covered by a sheet. Based on this observation, the police entered the house, arrested Riddick, and conducted a search that revealed incriminating evidence. In concluding that the entries into Riddick's residence without a warrant violated the Fourth Amendment, the Court stated:
In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.
[Id. at 590, 100 S.Ct. at 1382, 63 L.Ed.2d at 653.]
The sole distinction between Riddick and this case is that the police observed Riddick inside his house only after his son opened the door, while the police were able to observe Lescano through an open door when they arrived at the top of the stairway. We conclude that this distinction is insignificant under the "firm line at the entrance to the house" rule adopted in Payton.
This conclusion is supported by United States v. Oaxaca, 233 F.3d 1154 (9th Cir.2000), which rejected an argument that a warrantless arrest of a suspect who was found standing inside his garage was valid because the suspect voluntarily exposed himself to public view by leaving the garage door open. The court stated that "[t]he Fourth Amendment does not . . . protect only hermetically sealed residences" and concluded that the Payton rule prohibiting the police from entering a residence to make a warrantless arrest applies even if the door to the residence is left open. Id. at 1157. The court also rejected the government's argument that Oaxaca's arrest could be sustained under "the doorway exception to the warrant requirement" recognized in United States v. Santana, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976), because the arresting officers "crossed the threshold of the door and entered Oaxaca's home before placing him under arrest[.]" Id. at 1158; see also United States v. Quaempts, 411 F.3d 1046, 1047 (9th Cir.2005); Hadley v. Williams, 368 F.3d 747, 750 (7th Cir.2004). But see United States v. Gori, 230 F.3d 44, 50-54 (2d Cir.2000), cert. denied, 534 U.S. 824, 122 S.Ct. 62, 151 L.Ed.2d 29 (2001).
This case is squarely governed by Payton. Even if Detective Flatley and his backup team were in a public place when they first observed Lescano, he was inside the apartment at the time, and the officers did not place him under arrest until they entered the apartment. Thus, Lescano's arrest, and the search that revealed defendant, occurred only after the officers had crossed the threshold that "may not reasonably be crossed without a warrant." Payton, supra, 445 U.S. at 590, 100 S.Ct. at 1382, 63 L. Ed.2d at 653. Therefore, the entry into the apartment violated the Fourth Amendment unless it was justified by "exigent circumstances." Ibid.

C
The determination whether sufficient exigent circumstances exist to justify a warrantless entry into a residence is "highly fact-sensitive." State v. Lewis, *545 116 N.J. 477, 487, 561 A.2d 1153 (1989). If the police had sufficient time to obtain a warrant, and the alleged exigent circumstances were "police created," the evidence obtained as a result of a warrantless entry must be suppressed. See State v. Hutchins, 116 N.J. 457, 468-77, 561 A.2d 1142 (1989). "Police-created exigent circumstances which arise from unreasonable investigative conduct cannot justify warrantless home entries." State v. De La Paz, 337 N.J.Super. 181, 196, 766 A.2d 820 (App.Div.), certif. denied, 168 N.J. 295, 773 A.2d 1158 (2001).
In determining whether a warrantless entry into a residence was justified by genuine exigent circumstances or was the product of a police-created exigency, a court should "appraise the [officers'] conduct during the entire period after they had a right to obtain a warrant and not merely from the moment when they knocked at the [suspect's] front door." United States v. Patino, 830 F.2d 1413, 1416 (7th Cir.1987) (quoting United States v. Rosselli, 506 F.2d 627, 630 (7th Cir. 1974)). A court's "first concern in analyzing a claim of manufactured exigency is whether [the officers] could have obtained a search warrant prior to the development of the exigent circumstances upon which they relied." Hutchins, supra, 116 N.J. at 470, 561 A.2d 1142 (quoting United States v. Webster, 750 F.2d 307, 327 (5th Cir. 1984), cert. denied, 471 U.S. 1106, 105 S.Ct. 2340, 85 L.Ed.2d 855 (1985)).
Professor LaFave has suggested that in determining whether a warrantless entry into a residence to make an arrest was justifiable under the exigent circumstances exception to the warrant requirement, a court should distinguish between a "planned" arrest and an arrest made in the course of an ongoing investigation:
Courts have understandably been reluctant to accept police claims of exigent circumstances in [planned arrest] situations, for it ordinarily appears that whatever exigencies thereafter arose were foreseeable at the time the arrest decision was made, when a warrant could have readily been obtained. . . .
On the other hand, when the occasion for arrest arises while the police are already out in the field investigating the prior or ongoing conduct which is the basis for the arrest, there should be a far greater reluctance to fault the police for not having an arrest warrant. Here, the presumption should be in favor of a warrantless arrest rather than against it, as the probabilities are high that it is not feasible for the police to delay the arrest while one of their number leaves the area, finds a magistrate and obtains a warrant, and then returns with it. [3 Wayne R. LaFave, Search & Seizure: A Treatise on the Fourth Amendment § 6.1(f) at 319-21 (4th ed. 2004) (footnotes omitted).]
The arrest of Lescano that led to defendant's discovery and arrest was a planned arrest for which a warrant could readily have been obtained. Detective Flatley had probable cause to arrest Lescano once he purchased cocaine from him. Although Flatley could have arrested Lescano without a warrant immediately after that purchase, he chose not to follow that course. Instead, he walked back to the police station, met with the officers on his backup team, which resulted in a decision to arrest Lescano, and then returned to the apartment house to make the arrest. A period of thirty to forty-five minutes elapsed between the undercover purchase of cocaine and the officers' return to the apartment house, which would have provided ample time to obtain a telephone warrant for Lescano's arrest. See R. 3:5-3; De La Paz, supra, 337 N.J.Super. at 196-97, 766 A.2d 820.
*546 Flatley sought to justify the failure to seek a warrant for Lescano's arrest on the ground that he did not know his name. However, if a suspect's name is unknown, the police may obtain an arrest warrant that sets forth "any name or description that identifies the defendant with reasonable certainty[.]" R. 3:2-3. Since Flatley could have described Lescano and the place where he was likely to be found, the fact that the police did not know Lescano's name would not have prevented them from obtaining a warrant for his arrest.
Flatley also testified that he expected to find Lescano in the hallway where he had bought the drugs. However, even assuming the officers could have made a warrantless arrest in the hallway, there was no particular reason for them to assume Lescano would still be in the hallway when they returned rather than in the second-floor apartment that the police had reason to believe was the base of operations for the drug distribution operation. Therefore, Flatley failed to provide a reasonable excuse for failing to seek a warrant before returning to the apartment house to arrest Lescano.
Accordingly, the order denying defendant's motion to suppress is reversed, the judgment of conviction is vacated and the case is remanded to the trial court.
NOTES
[1] The police also intended to arrest Omar Garcia if they found him in the apartment building, but were unsure whether he would still be there because they had received information that he had left the area.
[2] Even if the consent-once-removed doctrine were found applicable to this case, we question whether the consent Lescano and Garcia gave Detective Flatley to enter the hallway on the first floor would extend to the interior of the second floor apartment.