**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3453-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

EUCLIDE D. VALERIO-
GUZMAN,

     Defendant-Appellant.

_____

Submitted November 13, 2024 – Decided April 17, 2025

Before Judges Gilson and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 18-06-1689.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Kevin S. Finckenauer, Assistant Deputy Public Defender, of counsel and on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent (Boris Moczula, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Following the denial of his motion to suppress a handgun seized from the foyer of his apartment building, defendant Euclide Valerio-Guzman pled guilty to first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1), second-degree possession of a handgun without a permit, N.J.S.A. 2C:39-5(b), and first-degree attempted murder, N.J.S.A. 2C:5-1(a)(1) and 2C:11-3(a)(1). In accordance with his plea agreement, defendant was sentenced to an aggregate twenty-five years' incarceration subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

Defendant appeals from the order denying his motion to suppress the handgun. He contends the handgun was unlawfully seized by police and should have been suppressed because there were no exceptions justifying the warrantless search and seizure from the foyer of his apartment building. Defendant also argues for the first time on appeal, the unlawful seizure occurred from his home based on an observation made while in the courtyard near the front steps of the apartment building. After reviewing the record in light of the applicable law, we reject defendant's contention and affirm.

I.

We discern the facts from the record developed during the hearing on the motion to suppress. The trial court conducted a one-day evidentiary hearing, during which Irvington Police Department Sergeant Albern Jean-Simon was the

2

sole witness to testify.[1]  The court also reviewed photographs of the crime scene and the police report.

Then-officer Jean-Simon testified that on the mid-morning of March 24, 2018, he responded to a shooting incident at 2 Berkeley Terrace in Irvington.  In less than a minute, he arrived at the scene where he found two females, heavily bleeding and lying face down in the outside courtyard of the apartment building with several civilians attempting to render aid.  As he attended to the victims, a witness approached and identified defendant as the shooter.  Jean-Simon then observed the only male, later identified as defendant, sitting alone on the front steps of 6 Berkeley Terrace and the exterior door to the left of defendant was "fully open."  Sergeant Glenise Wilson responded within "seconds" to the officer's radio call to headquarters for backup.

The officers approached defendant with their service weapons drawn. Jean-Simon ordered defendant to the ground and to show his hands.  Defendant complied and was handcuffed and arrested.

Jean-Simon described 6 Berkley Terrace as four apartments with two front exterior doors.  Each exterior door leads into a foyer, which gives access to two

---

[1]  At the time of the hearing, Jean-Simon had been promoted to sergeant.

separate apartments on each side of the foyer. As the officers lifted defendant from the ground in the courtyard after his arrest, Jean-Simon "kind of looked up" through the open left exterior door into the empty illuminated foyer and "saw a [black and silver] gun on the radiator." He reported his observation to Sergeant Wilson and notified headquarters. Thereafter, the gun was seized by the Essex County Prosecutor's Office (ECPO).

Defendant was indicted on seven counts, including first-degree murder, N.J.S.A. 2C:11-3(a)(1), various gun charges, and first-degree attempted murder. He then moved to suppress the handgun found in the apartment building's foyer. At the motion hearing, defendant's sole argument was that because Jean-Simon did not state in the police report that the door was open, the door must have been closed, and thus, the gun was not in plain view and should be suppressed.

After hearing the testimony and considering the evidence and the parties' arguments, on August 18, 2021, the trial court rendered an oral decision denying defendant's motion to suppress the handgun. The court determined by "more than a preponderance of the evidence that [Jean-Simon] observed the gun in the foyer as he described . . . ," including that the exterior door was open. The court was "satisfied the gun was observed by the officer in plain view." The court reasoned the "officer was lawfully where he was permitted to be when he made

[that] observation" of the gun in the "immediate aftermath" of the shootings. Additionally, the court explained the circumstances surrounding the shootings required the handgun to be seized "in order to protect the public from any harm or further harm." Thus, "for either or both of those reasons," the court found the "officers were justified in ultimately seizing the weapon." Consequently, no warrant was required for the handgun to be seized. A memorializing order was entered.

In April 2022, following the denial of his motion to suppress, defendant pled guilty to an amended count of first-degree aggravated manslaughter, second-degree unlawful possession of a handgun without a permit, and first-degree attempted murder. Pursuant to the negotiated plea, in July 2022, defendant was sentenced to an aggregate twenty-five-years' incarceration— twenty-five years for the aggravated manslaughter conviction subject to NERA, concurrent to a five-year term for the weapons conviction and a concurrent twenty-year term for the attempted murder conviction. Defendant now challenges the denial of his motion to suppress.

## II.

On appeal, defendant raises two contentions for our consideration. First, he argues the handgun was unlawfully seized from the foyer because there is no

exception to the warrantless search requirement. He next argues, for the first time on appeal, the handgun was unlawfully seized from his home based on the officer's observation made from outside of the apartment building. In that regard, he articulates his arguments as follows:

> THERE WAS NO EXCEPTION TO THE WARRANT REQUIREMENT THAT PERMITTED LAW ENFORCEMENT TO ENTER [DEFENDANT'S] HOME AND SEIZE THE GUN THEY WERE ABLE TO VIEW FROM OUTSIDE THE BUILDING.

Defendant's contentions are unavailing.

Our scope of review of a decision on a motion to suppress is limited. State v. Erazo, 254 N.J. 277, 297 (2023). In reviewing a motion to suppress, we must "uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Cohen, 254 N.J. 308, 318 (2023) (quoting State v. Ahmad, 246 N.J. 592, 609 (2021)). Accordingly, we "reverse only when the trial court's determination is 'so clearly mistaken that the interests of justice demand intervention and correction.'" State v. Gamble, 218 N.J. 412, 425 (2014) (quoting State v. Elders, 192 N.J. 224, 244 (2007)) (internal quotation marks omitted). In contrast, a trial court's legal conclusions and "the consequences that flow from established facts" are reviewed de novo. State v. Hubbard, 222 N.J. 249, 263 (2015).

6

Here, our inquiry focuses on the fact-sensitive issues raised on appeal: (1) whether the officer was lawfully in the courtyard of the apartment complex when he observed the handgun on the radiator, and (2) whether the foyer of the apartment building constitutes defendant's home.

Both the United States and New Jersey Constitutions guarantee that individuals shall be free from "unreasonable searches and seizures." U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7; see State v. Hagans, 233 N.J. 30, 38 (2018). Generally, a search or seizure without a warrant is "presumptively unreasonable and therefore invalid . . . [unless] the warrantless search or seizure fell within one of the few well-delineated exceptions to the warrant requirement." State v. Nyema, 249 N.J. 509, 527 (2022) (quoting Elders, 192 N.J. at 246) (internal quotation marks omitted).

"Plain view is one of the recognized exceptions to the warrant requirement." State v. Johnson, 476 N.J. Super. 1, 20 (App. Div. 2023). Under the plain-view exception, the officer must be lawfully present in the viewing area when he or she observes and seizes the evidence, and the incriminating nature of the evidence to be seized must be immediately apparent to the officer. State v. Williams, 254 N.J. 8, 45 (2023) (quoting State v. Gonzales, 227 N.J. 77, 101 (2016)).

To satisfy the "immediately apparent" prong, the officer must have probable cause to associate the item in plain view with criminal activity before seizing it. State v. Johnson, 171 N.J. 192, 213 (2002). In establishing probable cause, the officer need not prove that an officer's suspicion is "correct or more likely true than false." Id. at 215 (quoting State v. Bruzzese, 94 N.J. 210, 237 (1983)). Rather, "[p]robable cause exists if at the time of the police action there is 'a "well grounded" suspicion that a crime has been or is being committed.'" State v. Sullivan, 169 N.J. 204, 211 (2001) (quoting State v. Waltz, 61 N.J. 83, 87, 293 (1972)).

The parties do not dispute that the officers were lawfully present in the public courtyard of the apartment building in response to a report of criminal activity—the shooting of two female victims. Rather, defendant argues Jean-Simon's observation of the handgun in plain view while arresting defendant did not provide a sufficient basis for the ECPO to enter the building's foyer and seize the handgun. Defendant's contention misapprehends the plain-view doctrine and has no support in the record.

Defendant's arrest in the courtyard gave Jean-Simon the lawful opportunity to make the immediate observation of the handgun on the radiator in the foyer through the open exterior door. Based on the witness's

8

identification, Jean-Simon had probable cause to believe defendant was the shooter and he used that handgun based on its proximity to the courtyard. Thus, we are convinced the officer's conduct was reasonable and objective and he was not required to "close his eyes to suspicious evidence in plain view" when it was immediately apparent that the handgun was evidence related to the shooting. Johnson, 171 N.J. at 207 (quoting Bruzzese, 94 N.J. at 237). We, therefore, conclude the search and seizure of the handgun met the plain-view exception to the warrant requirement.

We next address defendant's argument that the "potentially shared" foyer is defendant's home and, therefore, is a constitutionally protected area. If it was defendant's home, defendant argues the State was required to present evidence that the door to the foyer was "routinely left unlocked" or that the "public routinely entered the common areas." Defendant's argument lacks merit.

The seizure of the evidence is permitted under the plain-view doctrine where "the seizure can be made without intruding into any constitutionally protected area or the intrusion can be made in conformity with the Fourth Amendment." State v. Pineiro, 369 N.J. Super. 65, 73-74 (App. Div. 2004); see also Johnson, 171 N.J. at 208. In New Jersey, it is well-established that a common hallway or area in a multiple-unit apartment building is not within the

zone of privacy protected by the Fourth Amendment and the parallel provision of the New Jersey Constitution. Johnson, 171 N.J. at 209. Generally, in "multi-occupancy premises . . . none of the occupants can have a reasonable expectation of privacy in areas that are also used by other occupants." State v. Penalber, 386 N.J. Super. 1, 10 (App. Div. 2006) (citations omitted).

Defendant's reliance on State v. Williams, 461 N.J. Super. 1 (App. Div. 2019) is misplaced. In Williams, we "stress[ed] that our decision [was] limited to the specific facts of [that] case," given that the living arrangements in a boarding or rooming house are different from those in an apartment building. Id. at 15-16.

Defendant's reliance on State v. Mellody, 479 N.J. Super. 90 (App. Div. 2024), to support his argument that "law enforcement unlawfully entered the foyer to seize the gun" is also misplaced. In Mellody, we held an attached garage was afforded the same privacy protection as a person's home, or at the least the home's protected curtilage. Id. at 115-16.

Here, the handgun was seized in a foyer, the common area of the apartment building, and visible from a "wide open" door. The foyer was an open space and shared by residents on each side, guests, and delivery persons. It was more "akin to the common hallway of an apartment building," which belies

defendant's contention that that the foyer constituted part of his home in which he had a legitimate expectation of privacy. See State v. Smith, 37 N.J. 481, 496, (1962); see also State v. Johnson, 171 N.J. 192, 209 (2002) (Johnson I) ("none of the occupants [of a multi-occupancy premises] can have a reasonable expectation of privacy in areas that are also used by other occupants."). Given the totality of the circumstances, we conclude defendant did not have a reasonable expectation of privacy in the foyer. Therefore, ECPO's entry into the foyer was permissible, and the trial court properly denied defendant's motion to suppress.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-3453-22