**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0330-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

TROY K. RUSSELL,

    Defendant-Appellant.

_____

Submitted December 3, 2024 – Decided April 30, 2025

Before Judges Bishop-Thompson and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 22-10-0800.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Colin Sheehan, Assistant Deputy Public Defender, of counsel and on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent (Thomas R. Clark, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant Troy Russell appeals from an order denying his motion to suppress evidence seized pursuant to a warrantless search of his person and of a plastic bag hidden behind an electric panel located in a common hallway area of an apartment complex. Defendant contends probable cause was not established to arrest and search him and there were no exceptions justifying the warrantless search and seizure of the handgun found in the plastic bag. We reject these arguments because the trial court's factual findings are supported by substantial credible evidence, and we affirm.

I.

We discern the facts from the record on the motion to suppress. The trial court conducted a one-day evidentiary hearing, during which Elizabeth Police Department (EPD) Detectives James Heller and Michael Nicolas testified. Heller and Nicolas had been EPD officers for fifteen years and were detectives within the Narcotics Division since 2018.

On November 18, 2020, Heller received a tip from an "extremely" reliable confidential informant (CI) that a person by the name "Trig" was in possession of a handgun and selling controlled dangerous substances (CDS) at Building 48 of the Mravlag Manor apartment complex (the Manor) in Elizabeth. Nicolas and Heller knew "Trig" to be defendant from prior narcotics investigations.

2

Heller testified that the CI provided information that resulted in him personally being the affiant on "four or five search warrants." The CI also provided information that led to the recovery of "[n]arcotics, handguns, [and] weapons," in addition to "other criminal enterprises, including fraudulent activity, identity theft, [and] matters that have been passed on to federal branches of law enforcement."

Both Heller and Nicolas described the Manor as a federal public housing complex consisting of approximately forty-eight to fifty buildings, each containing three floors and a total of nine apartments. Nicolas testified "wom[en] and children" "commonly" lived at the Manor and to the "best of [his] knowledge," none of the tenants were males. Defendant was not a resident of the Manor, but his girlfriend and their children lived on the second floor of Building 48.

Knowing the CI to be historically successful, Heller, Nicolas, and other EPD officers responded to the Manor at approximately 2:30 p.m. on November 18, 2020. However, after searching for defendant and being unable to locate him, they left the Manor.

That same day, around 7:15 p.m., the CI again contacted Heller stating Trig was inside Building 48 and selling CDS. Heller, Nicolas, and other EPD

3

narcotics detectives arrived at the Manor. Nicolas and Detective Alexander Gonzalez entered Building 48 through the front door that was left ajar[1] and began searching for defendant. Heller and other officers stayed outside in the event there was a foot pursuit.

Nicolas and Gonzalez began climbing the stairs and heard individuals talking on the floors above them. They heard a male voice ask, "are you good," which is "common narcotics lingo" for "are you holding narcotics" or "do you have anything." Based on their experience, the detectives believed the conversation to be about narcotics. As they progressed up the stairs, the detectives encountered co-defendant James Owens on the first landing, which was between floors. The detectives continued to the second floor and approached defendant. As Nicolas approached defendant, from three to four feet away, Nicolas "immediately smelled the odor of marijuana on [defendant's] person." Nicolas eventually determined the marijuana smell was emanating from defendant's clothing. Nicolas then "conducted a search of [defendant's]

---

[1] Nicolas testified that he had been to Building 48 "many times" and the front doors in the Manor were commonly propped open. Nicolas explained that he had worked extra duty assignments on numerous occasions at the Manor, and while working. During those times, he observed the front doors to other buildings propped open and would often remove objects from the front doors so they would close.

A-0330-23

person for the origin of the odor of marijuana." Nicolas's search resulted in the discovery of "[h]eroin and some pills" in defendant's pants pocket.

As Nicolas was searching and handcuffing defendant, Heller entered the building and began "checking the immediate area" near defendant. Based on his experience as an officer and knowing that people used "voids in the walls to hide stuff[,]" Heller "observed a piece of black plastic behind a metal piece of sheathing" of an electric box. Heller testified that he had recovered items behind these sheathings in the Manor "six or seven times [before] in his career." The electric box was located in the hallway a few feet away from defendant. The sheathing, approximately two feet wide and located about five feet off the ground, was missing a bolt and was loose. Heller slid the sheathing back and removed a black opaque plastic bag from behind the wall, which contained a handgun. Defendant was subsequently arrested and transported to EPD headquarters, where Nicolas recovered more heroin from defendant's person.

Defendant was indicted on two counts of third-degree possession of a CDS, N.J.S.A. 2C:35-10(a)(1); third-degree possession of CDS with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3); third-degree possession of CDS with intent to distribute within 1,000 feet of school property, N.J.S.A. 2C:35-7(a); second-degree possession of CDS with intent to distribute

5

within 500 feet of public property, the Manor, N.J.S.A. 2C:35-7.1(a); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1)[2]; and second-degree possession of a firearm while committing a CDS crime, N.J.S.A. 2C:39-4.1(a). Thereafter, defendant moved to suppress the physical evidence seized from the warrantless search during his arrest.

After hearing the testimony and considering the evidence and the parties' arguments, on April 27, 2023, the trial court issued a written opinion and corresponding order denying defendant's motion to suppress. The court credited Nicolas's testimony that he "smelled the odor of marijuana on defendant's person when he approached him." The court reasoned:

> Based upon [Nicolas's] extensive experience in marijuana investigations, and his training on the odor of both raw and burnt marijuana, he detected the odor of marijuana emanating from defendant's person which provided him with probable cause to arrest defendant and to search him to find the origin of the odor. Therefore, the drugs [Nicolas] found on defendant during such search will not be suppressed.

Concerning the discovery of the handgun in the electrical box, the trial court held the State proved by a preponderance of the evidence that the gun was

---

[2] It should be noted that there is a section of N.J.S.A. 2C:39-5, specifically subsection f, that has been deemed unconstitutional under Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Platkin, 742 F. Supp. 3d 421 (D.N.J. 2024).

abandoned and therefore, defendant had no standing to challenge its removal. The court reasoned that "[u]nder the totality of circumstances, an objectively reasonable officer would have believed that the bag was abandoned." As such, "Heller had the right, if not a duty, to retrieve the bag from the electrical wires where he had found contraband on other occasions."

The court also rejected defendant's argument that he had a reasonable expectation of privacy in the hallway and in the electrical box. The court determined that defendant may have been a guest in Building 48; however, he was not visiting the mother of his child or his child. Rather, he was in the building to meet the co-defendant and was engaged in a "narcotics-related conversation." The court also reasoned defendant "had no reasonable expectation of privacy in the hallway and certainly none in the electrical box on the wall from which Heller observed part of a plastic bag." The court also credited and found significant Heller's testimony that he previously found contraband inside electrical boxes at the Manor. Consequently, the seized evidence was admissible.

In May 2023, following the denial of his motion to suppress, defendant pleaded guilty to second-degree unlawful possession of a handgun. Defendant was sentenced to three-years' incarceration with a one-year period of parole

A-0330-23

ineligibility as prescribed by the Graves Act, N.J.S.A. 2C:43-6(c). The remaining counts of the indictment were dismissed. Defendant now challenges the denial of his motion to suppress.

II.

On appeal, defendant presents the following arguments for our consideration:

> POINT I. THE TRIAL COURT ERRED IN DENYING THE SUPPRESSION MOTION BECAUSE THE ODOR OF MARIJUANA DID NOT ESTABLISH PROBABLE CAUSE TO ARREST AND SEARCH [DEFENDANT] WITHOUT A WARRANT.
>
> POINT II. THE TRIAL COURT ALSO ERRED IN DENYING THE SUPPRESSION MOTION BECAUSE [DEFENDANT] HAD AN ESTABLISHED REASONABLE EXPECTATION OF PRIVACY IN THE OPAQUE PLASTIC BAG—A CLOSED CONTAINER—AND DID NOT ABANDON IT. THEREFORE, OFFICER HELLER COULD NOT SEARCH THE BAG WITHOUT A WARRANT.

Our scope of review of a decision on a motion to suppress is limited. State v. Erazo, 254 N.J. 277, 297 (2023). In reviewing a motion to suppress, we must "uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Cohen, 254 N.J. 308, 318 (2023) (quoting State v. Ahmad, 246 N.J. 592, 609 (2021)). Accordingly, we "reverse only when the trial court's determination is

'so clearly mistaken that the interests of justice demand intervention and correction.'" State v. Gamble, 218 N.J. 412, 425 (2014) (quoting State v. Elders, 192 N.J. 224, 244 (2007)) (internal quotation marks omitted). In contrast, a trial court's legal conclusions and "the consequences that flow from established facts" are reviewed de novo. State v. Hubbard, 222 N.J. 249, 263 (2015).

Both the United States and New Jersey Constitutions guarantee that individuals shall be free from "unreasonable searches and seizures." U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7; see State v. Hagans, 233 N.J. 30, 38 (2018). Generally, a search or seizure without a warrant is "presumptively unreasonable and therefore invalid . . . [unless] the warrantless search or seizure fell within one of the few well-delineated exceptions to the warrant requirement." State v. Nyema, 249 N.J. 509, 527 (2022) (quoting Elders, 192 N.J. at 246) (internal quotation marks omitted).

A.

We first address defendant's argument that the evidence seized during the search conducted prior to his arrest should have been suppressed because the totality of circumstances did not establish probable cause. Defendant's contention is unavailing as probable cause was established by the odor of marijuana and the informant's tip.

"Information related by informants may constitute a basis for probable cause, provided that a substantial basis for crediting that information is presented." State v. Jones, 179 N.J. 377, 389 (2004). A court must consider the totality of the circumstances in determining whether an informant's tip establishes probable cause, including the informant's "veracity and basis of knowledge." Ibid. (quoting State v. Novembrino, 105 N.J. 95, 123 (1987)). A deficiency in one factor may be compensated "by a strong showing as to the other, or by some other indicia of reliability." State v. Zutic, 155 N.J. 103, 110-11 (1998).

Regarding the informant's veracity, the CI had significant experience with the EPD Narcotics Division as an informant, and the detectives verified that the CI's tips led to many successful arrests in the past. See State v. Sullivan, 169 N.J. 204, 213 (2001) ("An informant's veracity may be shown by demonstrating that the informant proved to be reliable in previous police investigations."). The record shows the CI had a sufficient basis of knowledge because the CI led the detectives to a specific building in a fifty-building complex, indicated that both drugs and weapons would be involved, and named defendant specifically. This tip was corroborated on the officer's second visit to the Manor.

A-0330-23

"[T]he warrantless search of persons incident to their lawful arrest" is a "well[-]established" exception to the warrant requirement. State v. Torres, 253 N.J. 485, 503 (2023). Since "a lawful 'custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment[,] . . . a search incident to the arrest requires no additional justification.'" State v. Lentz, 463 N.J. Super. 54, 70 (App. Div. 2020) (alterations in original) (quoting United States v. Robinson, 414 U.S. 218, 235 (1973)). "Probable cause exists when the totality of the facts and circumstances presented to an arresting officer would support a person 'of reasonable caution in the belief that an offense has been or is being committed.'" Torres, 253 N.J. at 503 (quoting State v. Sims, 75 N.J. 337, 354 (1978)). "[C]ourts are to give weight to 'the officer's knowledge and experience' as well as 'rational inferences that could be drawn from the facts objectively and reasonably viewed in light of the officer's expertise.'" State v. Citarella, 154 N.J. 272, 279 (1998) (quoting State v. Arthur, 149 N.J. 1, 10-11 (1997)).

Prior to the recent change in our law regarding the possession and use of cannabis,[3] "[o]ur courts have long recognized that the smell of marijuana

_____

[3] We note that under the New Jersey Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act, N.J.S.A. 24:6I-31 to -56,

'constitutes probable cause "that a criminal offense ha[s] been committed and that additional contraband might be present."'" Cohen, 254 N.J. at 320 (second alteration in original) (quoting State v. Walker, 213 N.J. 281, 290 (2013)). Upon detecting the smell of marijuana, police are authorized "to conduct a warrantless search of the persons in the immediate area from where the smell [had] emanated." State v. Nishina, 175 N.J. 502, 516 (2003) (alteration in original) (quoting State v. Vanderveer, 285 N.J. Super. 475, 481 (App. Div. 1995)). The search must be reasonable in scope. Cohen, 254 N.J. at 321.

We hold the court did not abuse its discretion in finding the officers had probable cause to arrest defendant and to search him for the origin of the odor. We are satisfied the court's conclusion that the officers had probable cause to believe that defendant was engaged in a drug transaction is amply supported by the record—the CI's specific and corroborated information, and the odor of marijuana along with defendant's "drug deal" conversation in the hallway viewed in the context of the officers' extensive experience in the Narcotics Unit established probable cause. See Nishina, 175 N.J. at 515-16. In sum, the court

___

which became effective on February 22, 2021, an odor of marijuana cannot form the basis for conducting a warrantless search. N.J.S.A. 2C:35-10(c)(a). However, the amended statute does not apply here "[b]ecause that limitation is prospective" and this search took place before its effective date. State v. Cambrelen, 473 N.J. Super. 70, 76 n.6 (App. Div. 2022).

made sufficient factual findings supporting its probable cause determination and conclusion that defendant's arrest and search incident to his arrest were lawful. As those factual findings are all supported by credible evidence in the record, we affirm the trial court's ruling that the items seized in the search of defendant's person were admissible.

B.

We next address defendant's argument that the seized handgun police found in an opaque plastic bag hidden in the electrical box located in the apartment building hallway should have been suppressed because it was not abandoned, and defendant maintained an expectation of privacy in the "closed container." Defendant's contention is unavailing.

"[A] defendant will not have standing to object to the search or seizure of abandoned property." State v. Johnson, 193 N.J. 528, 548-49 (2008). The State bears the burden of proving abandonment by a preponderance of the evidence. Id. at 548 n.4; see also State v. Gartrell, 256 N.J. 241, 250-51 (2024). To establish abandonment, the Court has adopted a three-factor test: "[f]or standing purposes, property is abandoned if: (1) a person has [either actual or constructive] control or dominion over property[;] (2) he knowingly and voluntarily relinquishes any possessory or ownership interest in the property[;]

13

and . . . (3) there are no other apparent or known owners of the property." State v. Carvajal, 202 N.J. 214, 225 (2010) (citing Johnson, 193 N.J. at 549); see also Gartrell, 256 N.J. at 251.

We agree with the trial court that there were no facts to suggest that defendant was the owner of the plastic bag, which was within a few feet of him but secreted in the electrical box in a common hallway in the building where defendant did not reside. The court appropriately found that "an objectively reasonable officer would have believed that the bag was abandoned."

In New Jersey, it is well-established that a common hallway or area in a multiple-unit apartment building is not within the zone of privacy protected by the Fourth Amendment and the parallel provision of the New Jersey Constitution. State v. Johnson, 171 N.J. 192, 209 (2002). Generally, in "multi-occupancy premises . . . none of the occupants can have a reasonable expectation of privacy in areas that are also used by other occupants." State v. Penalber, 386 N.J. Super. 1, 10 (App. Div. 2006) (citations omitted). Additionally, "a tenant does not have a reasonable expectation of privacy in the common areas of a building merely because doors to the common areas are normally kept locked and require a key for access." State v. Brown, 282 N.J. Super. 538, 547 (App.

14

Div. 1995) (citing United States v. Concepcion, 942 F.2d 1170, 1171-72 (7th Cir. 1991)).

Defendant's argument that the common hallway provides a reasonable expectation of privacy lacks merit. Citing well-established law, the trial court aptly concluded defendant, as a guest, had no reasonable expectation of privacy in the common hallway and more specifically, in an electrical box in that common hallway. We are also not persuaded by defendant's argument that the lease required the outside doors of the apartment building to be closed and locked at all times. The record shows that on the day of defendant's arrest, the door to Building 48 was both unlocked and propped open.

Moreover, Nicolas testified that it was common for the buildings' entry doors in the complex to be left unlocked and propped open by residents, and he would often close the doors while working at the Manor. We conclude the hallway was open to the public and the electric box was open to the building superintendent, manager, or electrician. Therefore, the seizure of the handgun was constitutionally permissible, and defendant's motion was properly denied.

Having reviewed the record, we discern no error in the denial of defendant's motion to suppress the evidence seized on his person and in the electrical box in the apartment building hallway.

A-0330-23

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-0330-23